**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 24 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

RONNIE L. BARNES,

Petitioner-Appellant,

v.

H.N. SCOTT,

Respondent-Appellee.

No. 98-6085

---

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA
## (D.C. No. CIV-97-274-A)

---

Submitted on the briefs:

Michael G. Katz, Federal Public Defender, James P. Moran, Assistant Federal Public Defender, Denver, Colorado, for Petitioner-Appellant.

W.A. Drew Edmondson, Attorney General of Oklahoma, Diane L. Slayton, Assistant Attorney General, Oklahoma City, Oklahoma, for Respondent-Appellee.

---

Before **BALDOCK** , **EBEL** , and **MURPHY** , Circuit Judges.

---

**EBEL** , Circuit Judge.

---

In this case, petitioner Ronnie Lee Barnes appeals the district court's denial of his petition for writ of habeas corpus under 28 U.S.C. § 2254. Mr. Barnes asserts that the Oklahoma state court's application of a 1987 statutory amendment adding life without parole to the sentencing options for first degree murder violates his rights under the Ex Post Facto Clause. For the reasons that follow, we disagree and affirm the district court's denial of Mr. Barnes' habeas corpus petition. [1]

## Background

On April 6, 1988, Mr. Barnes was charged with first degree murder for a crime committed on October 15, 1987. At the time of the crime, the punishment for first degree murder in Oklahoma was life imprisonment or death. *See* Okla. Stat. Ann. tit. 21, § 701.9 (1981). On November 1, 1987, § 701.9 was amended to include a third intermediate option, life imprisonment without parole. In 1989, Mr. Barnes was tried, convicted, and sentenced to life imprisonment. The state did not seek the death penalty, and the judge refused to instruct the jury on the life imprisonment without parole option because the option had not been available when Mr. Barnes committed the crime. On appeal, Mr. Barnes' conviction was

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

reversed on unrelated grounds and remanded for a new trial. On remand, the state filed a bill of particulars seeking the death penalty which the court dismissed prior to trial. The court did, however, submit the option of life without parole to the jury. In 1993, Mr. Barnes was convicted for a second time and this time he was sentenced to life imprisonment without parole.

On direct appeal, Mr. Barnes asserted, inter alia, that application of the 1987 amendment to him violated the Ex Post Facto Clause. The Oklahoma Court of Criminal Appeals affirmed his conviction and sentence. The federal district court denied his habeas corpus petition, holding that the addition of an intermediate punishment option of life imprisonment without parole did not affect the quantum of punishment available, and, therefore, was not an ex post facto violation. On appeal, Mr. Barnes raises the same issue–that his sentence of life without parole violates the Ex Post Facto Clause.

**Discussion**

Mr. Barnes filed his federal habeas corpus petition in February 1997. The provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which altered the substantive standard by which federal courts review state court determinations of law, apply to this case because Mr. Barnes filed his habeas petition after April 24, 1996, AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Hooks v. Ward*, 184 F.3d 1206, 1213 (10th

-3-

Cir. 1999). Therefore, because Mr. Barnes' claim of ex post facto violation was adjudicated on the merits in state court, this court cannot grant him habeas corpus relief on the ex post facto question of law unless the state court's adjudication on the issue "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The United States Constitution expressly prohibits states from enacting ex post facto laws. U.S. Const. Art. I, § 10, cl.1. "The focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage' [to covered offenders] . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *California Dep't of Corrections v. Morales*, 514 U.S. 499, 506 n.3 (1995).

The amendment at issue here does not alter the definition of Mr. Barnes' criminal conduct. Therefore, the narrow issue before this court is whether the retroactive application of the 1987 amendment to § 701.9 increased the punishment to which Mr. Barnes was subject when it added an intermediate punishment option not available at the time the crime was committed and when the intermediate option of life without parole neither increased the maximum punishment possible (death) nor increased the minimum punishment possible for

the offense. [2] Here, the critical date for our review of whether this case poses serious ex post facto implications is the date that Mr. Barnes committed the crime, not the date of his first trial. *See Weaver v. Graham*, 450 U.S. 24, 30-31 (1981) (holding that a statute violates the Ex Post Facto Clause "if it is both retrospective and more onerous that the law in effect on the date of the offense"); *United States v. Gerber*, 24 F.3d 93, 96 (10th Cir. 1994) (same).

Under the law as it existed at the time Mr. Barnes committed his crime, the death penalty was an available option although the state chose to seek only a sentence of life imprisonment with the possibility of parole. Retroactively applying the amendment to Mr. Barnes upon retrial, however, gave the jury the additional option of life without parole, an option they selected.

In *Hatch v. Oklahoma*, 58 F.3d 1447 (10th Cir. 1995), this court considered an ex post facto challenge to retroactive application of an Oklahoma law dispensing with the requirement that the Oklahoma Court of Criminal Appeals perform a proportionality review on every appeal from a death sentence. In

---

[2] We recognize that we asked for supplemental briefs on whether prosecutorial vindictiveness motivated the state's actions in Mr. Barnes' second trial. Following consideration of the parties' arguments, we agree that the issues of prosecutorial vindictiveness were not raised to the district court and therefore, are not properly before this court on appeal. *See Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992). We note, however, that if we were to address the prosecutorial vindictiveness issues, we would determine them to be without merit.

holding that this action did not violate the Ex Post Facto Clause, we reasoned that "[t]he penalty for first degree murder, both before and after the legislature changed [the statute], was death. Petitioner cannot 'escape the ultimate burden of establishing that the measure of punishment itself has changed.'" *Id.* at 1464 (quoting *Morales*, 514 U.S. at 510 n.6); *see also United States v. Shorty*, 159 F.3d 312, 317 (7th Cir. 1998) (holding that if, under either the old or new law, the maximum amount of punishment does not change, there is no ex post facto violation), cert. denied, 119 S. Ct. 2024 (1999).

In *Morales*, 514 U.S. at 506 n.3, the Court recognized that, following its decision in *Collins v. Youngblood*, 497 U.S. 37 (1990), the focus of the ex post facto inquiry was no longer on whether challenged criminal law changes operated to the "disadvantage" of the defendants, as had been the case in *Lindsey v. Washington*, 301 U.S. 397 (1937), *Miller v. Florida*, 482 U.S. 423 (1987), and *Weaver*, 450 U.S. 24. The Court noted that, following *Collins*, the focus of the inquiry would be on "whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *Morales*, 514 U.S. at 506 n.3.

In *Collins*, the defendant challenged, as an ex post facto violation, a state statute allowing an appellate court to reform an improper jury verdict rather than grant a new trial. The Court rejected the notion that a legislative change violates

ex post facto if it merely "altered the situation of a party to his disadvantage."

497 U.S. at 48-49 (further quotation omitted). The Court, focusing on whether a

legislative change violates the Ex Post Facto Clause even if it does not actually

change the amount of punishment, held that the change at issue simply altered the

procedure for correcting an improper punishment, a procedural change which in

no way increased the defendant's punishment. *See id.* Therefore, even though the

defendant was disadvantaged by the new legislation in that he was denied a new

trial which he would otherwise have received, the Court held that there was no ex

post facto violation. *See id.* at 52.

Oklahoma courts have addressed a number of ex post facto challenges to

the 1987 amendment to § 701.9 adding life imprisonment without parole. It

appears, however, that the state ex post facto challenges to the change have all

been in the context of the trial court's failure to give the jury an instruction

including the additional sentencing option in cases where the defendant was

sentenced to death. In the majority of its decisions, the state court held that the

change was procedural and therefore, its retroactive application was not an ex

post facto violation. *See Wade v. State*, 825 P.2d 1357, 1363 (Okla. Crim. App.

1992); *Allen v. State*, 821 P.2d 371, 376 (Okla. Crim. App. 1991); *Salazar v.*

*State* , 852 P.2d 729, 737 (Okla. Crim. App. 1993).    [3]  The Oklahoma Court of Criminal Appeals held that because the 1987 amendment did not alter either the minimum or maximum penalty for first degree murder, the amendment was procedural in nature and therefore, not in violation of the Ex Post Facto Clause.    [4] *See Wade* , 825 P.2d at 1363;   *Allen* , 821 P.2d at 376.

"The substantive law is that which declares what acts are crimes and prescribes the punishment for committing them as distinguished from the procedural law which provides or regulates the steps by which one who commits a crime is to be punished." 88 C.J.S.    *Criminal Law*  § 2 (1989);   *see also*  Black's Law Dictionary 1281 (5th ed. 1979) (defining substantive law as "[t]hat which creates duties, rights and obligations, while 'procedural or remedial law' prescribes methods of enforcement of rights or obtaining redress") (citation omitted).

---

[3]     The court in  *Salazar*  circumscribed its decision to "the very limited facts of this death penalty case."  852 P.2d at 740.

[4]     The *Salazar*  court reiterated its prior holding in     *Ault v. State* , 115 P. 128 (Okla. Crim. App. 1911), in which it held that "procedural changes in the law, which do not prejudice or operate to the detriment of the defendant, apply to all trials occurring after the enactment of the statute." 852 P.2d at 737.  The court did not, however, address how this holding was affected by the Supreme Court's move away from the "disadvantage" standard articulated in     *Collins,*  497 U.S. at 52.

We do not agree with the Oklahoma state court's label of this amendment as procedural. It is clear that the addition of the intermediate penalty alters the available punishments for first degree murder, and is therefore, substantive. Designating the change as procedural, however, does not dispose of the ex post facto question. In determining whether the law is an ex post facto violation, we look to the effect of the statute, not the form. *See Weaver*, 450 U.S. at 31. As discussed above, the amendment to § 701.9 provides an intermediate alternative punishment for the crime of first degree murder. It does not alter the crime for which Mr. Barnes was indicted, increase the maximum punishment prescribed for that crime, or change the quantity or level of proof necessary to convict him. *See Dobbert v. Florida*, 432 U.S. 282, 294 (1977) (holding it "axiomatic that for a law to be ex post facto it must be more onerous than the prior law").

## Conclusion

In sum, it is our conclusion that at the time Mr. Barnes committed the crime, he was on notice that the presumptive sentencing range for first degree murder in Oklahoma was life imprisonment to death. At the time of his trial, his presumptive sentencing range remained life imprisonment to death. Adding an intermediate punishment did not prescribe more onerous punishment than that available under the old law.

-9-

We therefore conclude that the Oklahoma state court's determination that the amendment to § 701.9 is not an ex post facto law is not "contrary to" or "an unreasonable application of" established Supreme Court law. 28 U.S.C. § 2254(d)(1). Accordingly, the district court was correct in denying Mr. Barnes' petition for habeas corpus relief.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.