**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 25, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SONNY LAUREN HARMON, SR.,

     Petitioner–Appellant,

v.

GLYNN BOOHER, Warden; THE
OKLAHOMA PARDON AND
PAROLE BOARD, State of Oklahoma,
ex. rel.,

     Respondents–Appellees.

No. 07-6117

(D.C. No. CIV-04-235-C)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **HARTZ**, and **GORSUCH**, Circuit Judges.

Sonny Lauren Harmon, an Oklahoma state prisoner, appeals the denial of

his 28 U.S.C. § 2241 habeas petition. The district court granted a certificate of

appealability ("COA") on one issue: whether the retroactive application of an

---

[*] The case is unanimously ordered submitted without oral argument
pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and
judgment is not binding precedent, except under the doctrines of law of the case,
res judicata, and collateral estoppel. The court generally disfavors the citation of
orders and judgments; nevertheless, an order and judgment may be cited under the
terms and conditions of 10th Cir. R. 32.1.

Oklahoma statute to his case violated ex post facto principles. Exercising jurisdiction over this issue under 28 U.S.C. §§ 1291 and 2253(a), we **AFFIRM**.

Additionally, Harmon seeks a COA from this court to appeal the denial of two other claims in his habeas petition: (1) that his procedural due process rights were violated when he was rebilled on a discharged sentence without a hearing, and (2) that the Oklahoma state parole authorities violated his Fourth Amendment rights by considering illegally seized evidence at his parole revocation hearing. We **DENY** a COA as to these issues and **DISMISS** his appeal thereof.[1]

## I

In 1985, Harmon was sentenced in Oklahoma state court to consecutive fifteen-year sentences of imprisonment for Count 1, larceny of an automobile, and Count 2, attempted larceny of an automobile. Harmon was granted parole on Count 1 on September 15, 1987, and began serving his fifteen-year sentence on Count 2 (the "attempted larceny sentence"). On October 26, 1989, he was granted parole on Count 2 and released from custody. At that time, Harmon had 4,150

---

[1] A state prisoner proceeding under § 2241 must obtain a COA to appeal a denial of habeas relief. Montez v. McKinna, 208 F.3d 862, 867 (10th Cir. 2000); 28 U.S.C. § 2253(c)(1)(A). Accordingly, Harmon may not appeal the district court's decision absent a grant of a COA by this court. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). This requires Harmon to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quotations omitted).

days of parole remaining before his attempted larceny sentence would be discharged.

In 1991, Harmon violated the conditions of his parole by associating with persons on parole or with a criminal record. Instead of revoking his parole in full, the state revoked only one year of Harmon's sentence. After he returned to custody on the parole violation, Harmon was convicted on charges of operating a "chop shop" and sentenced to 20 years' imprisonment on February 7, 1992 (the "chop shop sentence"). This sentence was imposed concurrently with all sentences then in effect, including the time Harmon had yet to serve in the one-year revocation of the attempted larceny sentence. When this one-year revocation ended on March 22, 1992, he had 3,784 days remaining on the attempted larceny sentence.

In September 1992, Harmon attempted to escape from custody, and he subsequently pled guilty to an offense related to his escape. On March 12, 1993, he was sentenced to an additional three years' imprisonment (the "escape sentence"), to run consecutively to all other sentences. When Harmon was finally released from custody on May 17, 2001, he had 676 days of parole yet to serve on the escape sentence as well as the 3,784 days on the attempted larceny sentence.

While Harmon was on parole, law enforcement officers searched Harmon's home and discovered firearms, and Harmon was later arrested on charges related to the items found in the search and taken into custody with the Oklahoma

Department of Corrections ("DOC") on February 5, 2002. After a parole revocation hearing at which evidence of the discovered weapons was admitted, parole for both the attempted larceny sentence and the escape sentence was revoked in full on June 25, 2002, with time served since his February arrest credited towards those sentences. His certificates of revocation are silent as to whether the revocation sentences should be served concurrently with or consecutively to each other.

Harmon's DOC records show that DOC counted his attempted larceny and escape sentences concurrently from February 5, 2002. On March 2, 2003, the escape sentence was marked "discharged," and Harmon remained in custody serving the attempted larceny sentence. In December 2003, the DOC audited Harmon's sentences. The auditor determined that Harmon's sentences should have been served consecutively, and rebilled the escape sentence to begin running after discharge of the attempted larceny sentence.

After unsuccessfully seeking postconviction relief in state court, Harmon filed a pro se 28 U.S.C. § 2241 petition in the Western District of Oklahoma. Because Harmon had failed to exhaust one of his claims, the district court stayed his petition pending exhaustion of that claim in the Oklahoma state courts. Harmon exhausted this claim and moved to reopen the habeas proceeding. The district court appointed counsel to represent him in the proceeding, and ultimately

denied habeas relief on the merits of all claims asserted. Harmon, still represented by counsel, now appeals and seeks a COA.

## II

## A

The district court granted Harmon a COA on his claim that the state retroactively applied of a 1987 state law when it partially revoked his attempted larceny sentence, in violation of the Ex Post Facto Clause of the United States Constitution.[2] Under § 2241, a state prisoner is entitled to habeas relief if he can show that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." § 2241(c)(3). We review a district court's denial of a § 2241 petition de novo. Walck v. Edmondson, 472 F.3d 1227, 1235 (10th Cir. 2007).

An Oklahoma statute, enacted effective on November 1, 1987, gives state parole authorities "the discretion to revoke all or any portion of the parole." Okla. Stat. tit. 57, § 350(B) (emphasis added). Before this statute was enacted, state authorities could revoke the entirety of a parole, or choose not to revoke it at all, but they could not revoke only a portion of a parole. Okla. Stat. tit. 57, § 346

---

[2] The government asserts that Harmon's challenge to the partial revocation is untimely, because the revocation originally occurred in 1991 and he did not file a petition until 2004, far in excess of AEDPA's one-year period of limitation. See 28 U.S.C. § 2244(d)(1). Yet as Harmon points out, neither the government nor the district court raised the issue of untimeliness below. Timeliness under AEDPA is not jurisdictional and constitutes an affirmative defense. Day v. McDonough, 547 U.S. 198, 205 (2006). We conclude that the government forfeited any defense of untimeliness in this case.

(repealed 1987) (providing that upon a parole violation, a parolee "may . . . be rearrested and recommitted . . . to confinement for the remainder of . . . his original sentence"). Because Harmon's offense conduct leading to his 1985 attempted larceny conviction occurred before the effective date of § 350(B), he contends that the state's retroactive application of the statute to partially revoke his parole violated the Ex Post Facto Clause. See Weaver v. Graham, 450 U.S. 24, 24 (1981) (holding that a statute "violates the Ex Post Facto Clause if it is both retrospective and more onerous than the law in effect on the date of the offense").

Under Article I of the United States Constitution, the states are prohibited from enacting any ex post facto law. U.S. Const. art. I, § 10, cl. 1. This prohibition extends to enactments "which, by retroactive operation, increase the punishment for a crime after its commission." Garner v. Jones, 529 U.S. 244, 249 (2000). A law governing parole may run afoul of this prohibition if it "create[s] a significant risk of increasing [a parolee's] punishment," either "by its own terms" or by "practical implementation by the agency charged with exercising discretion." Id. at 255.

In Harmon's case, the Oklahoma state courts in which he sought postconviction relief, as well as the district court below, determined that although § 350(B) was retroactively applied to him, this application did not create a significant risk of increasing his punishment. We agree.

On its face, § 350(B) does not increase the sentence any particular individual will serve. Like the rule at issue in Garner, it merely alters the discretionary determinations available to state parole officials. See 529 U.S. at 247, 257 (holding that retroactive application of a rule allowing the Georgia Parole Board to review prisoners' parole eligibility less frequently did not necessarily increase any prisoner's time served). Before § 350(B) was enacted, the maximum punishment faced by a prisoner was the service of the full remainder of his sentence; after its enactment, the maximum possible punishment is the same.

Harmon argues that, in practice, the application of § 350(B) to his parole revocation increased the time he served in prison and on parole. He reasons that if his parole had been revoked in full—the only permissible means of revocation before November 1, 1987—his attempted larceny sentence would have been discharged sometime in the mid-1990s. In addition, because his escape sentence was imposed concurrently, he likely would have completed both sentences before 2002, when his parole was revoked a second time. Instead, he only served one year of his attempted larceny sentence concurrently with the chop shop sentence. When his parole was revoked in 2002, and it was determined that his attempted larceny and escape sentences were to run consecutively, he had 3,784 days remaining on the attempted larceny sentence.

There are two flaws in Harmon's argument. First, even accepting Harmon's calculations, the hypothetical release date he calculates if his parole had been revoked in full in 1991 relies on the later choice by a sentencing court to make his escape sentence run concurrently with any other sentences. Thus Harmon's argument depends upon the discretion of the sentencing court, not the discretion of the parole authorities. In any event, Harmon provides no indication that since 1987 there has been any systematic use of discretion to increase punishments in this way.

Second, Harmon's hypothesis that he would have served less time if his parole had been fully revoked in 1991, even if true, does not show that he was exposed to any greater punishment due to parole authorities' newly granted discretion to revoke his parole only in part. Under the statute in place before § 350(B), Harmon would have been subject to either complete revocation of his parole, or no revocation at all. Had authorities chosen not to revoke parole at all, Harmon would have had even more of his attempted larceny sentence remaining to serve. In short, the new option of partial revocation did not expose Harmon to greater punishment, no matter how it may have been applied as a matter of discretion. See also Barnes v. Scott, 201 F.3d 1292, 1296 (10th Cir. 2000) (holding that retroactive application of a statute did not violate the Ex Post Facto Clause when "[a]dding an intermediate punishment did not prescribe more onerous punishment than that available under the old law"). Because Harmon

cannot show that § 350(B), on its face or as applied, subjected him to an increase in potential punishment, we affirm the district court's finding that no ex post facto violation occurred.

## B

Harmon asks this court to grant him a COA to appeal his claim that he was denied procedural due process when his revocation sentences were rebilled as consecutive.[3] In December 2003, Oklahoma parole authorities audited the calculation of Harmon's parole and determined that his two revocation sentences imposed in 2002 should be consecutive to, rather than concurrent with, each other. According to Harmon, the revocation sentence in his escape conviction was discharged before the rebill occurred, and the DOC violated his right to procedural due process by reinstituting the sentence without first holding a hearing.[4]

The district court correctly held that Harmon had no liberty interest in the concurrent service of his sentences which might implicate Harmon's due process rights. Under Oklahoma state law, revocation sentences are presumed to be

---

[3] Although Harmon has now discharged his escape sentence, his claims regarding the rebilling of that sentence are not moot, because the rebill continues to affect the ultimate discharge date for his consecutive sentence imposed in 2002, which he is still serving. See DeFoy v. McCullough, 393 F.3d 439, 442 (3d Cir. 2005).

[4] Harmon argued below that the rebilling of his discharged sentence violated his rights under the Double Jeopardy Clause. This argument was not preserved on appeal, however, and we do not address it.

consecutive unless an underlying judgment and sentence provides otherwise. Okla. Stat. tit. 21, § 61.1. Harmon's attempted larceny and escape sentences were imposed consecutively to all other sentences in effect, and the revocation orders for each sentence did not mention concurrent service. Accordingly, Harmon had no entitlement to concurrent sentences, and had his attempted larceny sentence been rebilled before it was discharged, no liberty interest would have been infringed. See Stephens v. Thomas, 19 F.3d 498, 501 (10th Cir. 1994) (holding that a prisoner has no liberty interest in time credits to which he is not entitled under state law, and such credits may be revoked without procedural protection).

Harmon argues, however, that the discharge of his escape sentence gave rise to a liberty interest requiring some form of procedural due process, such as notice of the rebill and an opportunity to contest it. To determine whether a petitioner has been deprived of procedural due process, we apply a two-prong inquiry, asking "(1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process." Farthing v. City of Shawnee, 39 F.3d 1131, 1135 (10th Cir. 1994).

We need not decide whether Harmon has made a sufficient showing on the first prong, because he cannot prevail on the second. A hearing to determine whether Harmon's escape sentence was correctly discharged could result in only one answer: that it was discharged erroneously. See Jenkins v. Currier, 514 F.3d

1030, 1035 (10th Cir. 2008) (holding that a hearing before re-arrest of an erroneously released prisoner would serve no purpose, because "[t]he state would . . . assert the fact that appellant has not yet served his full term of imprisonment, and to that assertion appellant has no defense" (quotation omitted)). Under these circumstances, "granting appellant 'procedural' due process . . . would be to grant him nothing." Id. (quotation omitted). We therefore deny a COA on this issue.

**C**

Finally, Harmon urges us to grant a COA on his Fourth Amendment claim that Oklahoma parole authorities allowed illegally seized evidence to be presented at his parole revocation hearing on April 17, 2002. In Pennsylvania Board of Probation & Parole v. Scott, 524 U.S. 357 (1998), the Supreme Court held that "the federal exclusionary rule does not bar the introduction at parole revocation hearings of evidence seized in violation of parolees' Fourth Amendment rights." Id. at 364. The Court explained that the deterrence benefits of the exclusionary rule are outweighed in the parole context by the states' interest in maintaining "the traditionally flexible, administrative procedures of parole revocation." Id. Notwithstanding this clear Supreme Court precedent, Harmon argues that we should adopt the view of the dissenting Justices in Scott, who disagreed with the majority's conclusions regarding deterrence. See id. at 379 (Souter, J., dissenting). This, of course, we cannot do. We agree with the district court that

the Oklahoma state court's application of <u>Scott</u> to Harmon's case was not debatable by jurists of reason.

**IV**

For the foregoing reasons, we **AFFIRM** the district court's denial of Harmon's ex post facto claim.  We **DENY** a COA as to his remaining claims and **DISMISS** his appeal of those claims.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge