948 A.2d 160 (2008)
400 N.J. Super. 434
STATE of New Jersey, Plaintiff-Appellant,
v.
Steven R. FORTIN, Defendant-Respondent.
Docket No. A-3579-07T4.
Superior Court of New Jersey, Appellate Division.
Argued May 19, 2008.
Decided June 4, 2008.
*162 Nancy A. Hulett, Assistant Prosecutor, argued the cause for appellant (Bruce J. Kaplan, Middlesex County Prosecutor, attorney; Ms. Hulett, of counsel and on the brief).
Jacqueline E. Turner, Assistant Deputy Public Defender, argued the cause for respondent (Yvonne Smith Segars, Public Defender, attorney; Ms. Turner, of counsel and on the brief).
Before Judges STERN, A.A. RODRÍGUEZ and COLLESTER.
The opinion of the court was delivered by
STERN, P.J.A.D.
We granted leave to appeal to decide whether a defendant who faced only a thirty year period of parole ineligibility for a murder committed in 1994, if he was not sentenced to death under our former death penalty complex repealed on December 17, 2007, can be sentenced to life-without-parole as a result of the statute which repealed capital punishment. We hold that he cannot, and affirm the order of the Law Division which so concluded.

I.
Fortin was indicted for capital murder committed on August 11, 1994,[1] and the State sought the death penalty by filing a notice of aggravating factors. On direct appeal after Fortin's first trial, conviction, and imposition of the death sentence, the Supreme Court reversed and remanded for a new trial. State v. Fortin, 178 N.J. 540, 650, 843 A.2d 974 (2004) (Fortin II). The grand jury subsequently filed a supplemental indictment alleging that "[t]he murder was outrageously vile, horrible or inhuman in that it involved torture or an aggravated assault to victim" and "was committed while the defendant was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery and/or sexual assault." See former N.J.S.A. 2C:11-3c(4)(c) and (g) (as it read at the time of offense and prior to the amendment by L. 2007, c. 204); see also *163 Fortin II, supra, 178 N.J. at 637-50, 843 A.2d 974. The supplemental indictment was returned in response to Fortin II on September 22, 2004.
At his retrial following an interlocutory appeal on issues relating to the admissibility of evidence, State v. Fortin, 189 N.J. 579, 917 A.2d 746 (2007) (Fortin III), defendant was again convicted of capital murder.[2] On December 16, 2007, before the penalty phase of Fortin's retrial was to begin, the Governor commuted the death sentences of eight death row inmates to life imprisonment without the possibility of parole. The following day, December 17, 2007, the Legislature adopted legislation that abolished the death penalty and replaced it with life imprisonment without the possibility of parole. L. 2007, c. 204. The legislation provided that: "This act shall take effect immediately." L. 2007, c. 204, § 8.
The State moved to sentence Fortin under the new law, codified at N.J.S.A. 2C:11-3b(4), to life imprisonment without parole. Defendant objected on ex post facto grounds, arguing that the sentence of life-without-parole "did not exist at the time of the offenses giving rise to the Indictment."
After hearing argument on February 14, 2008, Judge James F. Mulvihill denied the State's motion. The court reasoned that, under Fortin II, defendant could only be sentenced to life imprisonment without parole if he waived his rights under the ex post facto clauses of the federal and state constitutions, which he did not do. Therefore, defendant was only eligible for a maximum sentence of life imprisonment with thirty years of parole ineligibility, the maximum authorized sentence at the time of his offense.
When Fortin was convicted of capital murder in 1994, he was subject to the death penalty if the jury determined that the State had proven beyond a reasonable doubt the existence of one or more of the statutory aggravating factors and, also beyond a reasonable doubt, that the aggravating factor or factors outweighed any mitigating factors presented by defendant. Fortin II, supra, 178 N.J. at 598-99, 613, 843 A.2d 974; see also former N.J.S.A. 2C:11-3c(2),(3)(a); State v. Biegenwald, 106 N.J. 13, 53-67, 524 A.2d 130 (1987). If the State did not satisfy both standards, he could only receive a minimum sentence of thirty years without parole eligibility, or a sentence of between thirty years and life imprisonment with thirty years to be served before parole eligibility. Fortin II, supra, 178 N.J. at 599, 604, 613-14, 843 A.2d 974; see also former N.J.S.A. 2C:11-3b, 3c(3)(b),(c).
On August 22, 2000, six years after the offense occurred, and six months before the penalty phase proceedings in the trial, the Legislature amended N.J.S.A. 2C:11-3 to permit a life sentence without parole in certain capital cases. Fortin II, supra, 178 N.J. at 604, 843 A.2d 974 (citing former N.J.S.A. 2C:11-3(b)(4)). Specifically, N.J.S.A. 2C:11-3b(4), as amended in 2000, provided:
If the defendant was subject to sentencing pursuant to subsection c. and the jury or court found the existence of one or more aggravating factors, but that *164 such factors did not outweigh the mitigating factors found to exist by the jury or court or the jury was unable to reach a unanimous verdict as to the weight of the factors, the defendant shall be sentenced by the court to a term of life imprisonment during which the defendant shall not be eligible for parole.
The legislation provided that "`[t]his act shall take effect immediately.'" Fortin II, supra, 178 N.J. at 604, 843 A.2d 974 (quoting L. 2000, c. 88).
Fortin endeavored to waive his rights under the ex post facto clause and asked that the new life-without-parole alternative be applied to him so that he could argue its application before the jury at the penalty phase. Id. at 604-05, 843 A.2d 974. "Before the penalty phase began . . . defendant announced that he would subject himself to the life-without-parole alternative and asked the court to instruct the jury in accordance with the newly-enacted provision." Id. at 604, 843 A.2d 974. The trial court rejected the request and ruled that defendant "could not waive an ex post facto objection" to the new law. Id. at 605-06, 843 A.2d 974.
The Supreme Court reversed. Id. at 604-12, 843 A.2d 974. The Court found that the statutory language, providing that "[t]his act shall take effect immediately," id. at 604, 843 A.2d 974, was "insolubly ambiguous" and did not answer the question of whether the Legislature intended the life-without-parole statute "to extend only to those capital murders committed after the statute went into effect or to all capital murders reaching the penalty phase after its effective date," id. at 606, 843 A.2d 974.
Relying upon the policy objectives of the legislation, the Court held that the life-without-parole statute applied to "all capital murder cases proceeding to the penalty phase after the legislation's effective date, provided that, in cases in which the murder preceded the effective date, the defendant must be willing to waive the protection of the Ex Post Facto Clause." Id. at 607, 843 A.2d 974. The Court further held that Fortin was entitled to waive his rights under the ex post facto clauses of the state and federal constitutions. Id. at 609-12, 843 A.2d 974. Accordingly, the Court ruled that if defendant was again convicted, in any penalty phase proceedings, the trial court "must give defendant the option of a life-without-parole jury instruction consistent with N.J.S.A. 2C:11-3b(4), provided defendant is willing to give a knowing, intelligent, and voluntary waiver of the application of the Ex Post Facto Clause." Id. at 612, 843 A.2d 974.
As a result of the 2007 amendment, N.J.S.A. 2C:11-3b(1) continues to provide that the sentence for murder is a term of thirty years with no parole eligibility, or a specific term of years between thirty years and life imprisonment, with thirty years of parole ineligibility. Alternatively, the sentence for capital murder shall be life imprisonment without parole under certain specified circumstances. N.J.S.A. 2C:11-3b(2)-(4); see also N.J.S.A. 30:4-123.51(k) (as amended by L. 2007, c. 204) ("Notwithstanding any provisions of this section to the contrary, a person sentenced to imprisonment pursuant to paragraph (2), (3) or (4) of subsection b. of N.J.S. 2C:11-3 shall not be eligible for parole").
As codified at N.J.S.A. 2C:11-3b(4), the new law provides that a person convicted of purposeful or knowing murder with a finding that defendant "committed the homicidal act by his own conduct"[3] or another statutory trigger, "shall be sentenced by the court to life imprisonment *165 without eligibility for parole, which sentence shall be served in a maximum security prison" if "any" of the aggravating factors, which were also the former death penalty aggravating factors, former N.J.S.A. 2C:11-3c(2), (4)(a)-(l), are proven beyond a reasonable doubt. As already noted, in this case, consistent with Fortin II, supra, the defendant had been charged with two aggravating factors embodied in the death penalty statute existing at the time of offense, and which are embodied in the present N.J.S.A. 2C:11-3b(4) which currently provides, in pertinent part:
Any person convicted under subsection a.(1) or (2) who committed the homicidal act by his own conduct . . . shall be sentenced by the court to life imprisonment without eligibility for parole, which sentence shall be served in a maximum security prison, if a jury finds beyond a reasonable doubt that any of the following aggravating factors exist:
. . . .
(c) The murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated assault to the victim;
. . . .
(g) The murder was committed while the defendant was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit murder, robbery, sexual assault, arson, burglary, kidnapping, carjacking or the crime of contempt in violation of [subsection b.] of N.J.S. 2C:29-9[.]
The new law provides that persons sentenced to life in prison without parole under N.J.S.A. 2C:11-3b(4) shall serve their terms "in a maximum security prison." This differs from the 2000 life-without-parole statute which provided nothing about the prison in which the sentence must be served. N.J.S.A. 2C:11-3b(2), (3). It also differs somewhat from the treatment of death row prisoners. By statute, defendants sentenced to death were to be "kept isolated from the general prison population in a designated State prison." N.J.S.A. 2C:49-6(a) (repealed by L. 2007, c. 204, § 7).
Unlike the former death penalty statute, the new law does not provide for a separate penalty phase, although it may well be required in many if not most capital cases to avoid undue prejudice by consideration of irrelevant or immaterial facts at the trial on guilt. Compare N.J.S.A. 2C:11-3b(4) with former N.J.S.A. 2C:11-3c(1). And, significantly, the new law does not provide for a defendant's presentation of mitigating factors, as the former death penalty statute did since its adoption in 1982. Compare N.J.S.A. 2C:11-3b(4) with former N.J.S.A. 2C:11-3c(5).

II.
Both the federal and state constitutions prohibit ex post facto laws. U.S. Const. art. I, § 10, cl. 1 ("No State shall . . . pass any . . . ex post facto Law. . . ."); N.J. Const. art. IV, § 7, ¶ 3 ("The Legislature shall not pass any . . . ex post facto law. . . ."). The State constitutional provision has the same philosophical underpinning as the federal clause. State v. Fortin II, supra, 178 N.J. at 608, n. 8, 843 A.2d 974. Therefore, the State provision is interpreted "as providing at least as much protection as its federal counterpart." Ibid.
The Ex Post Facto Clause was intended to interdict the retroactive application of criminal laws that harm the accused. Miller v. Florida, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351, 359-60 (1987) (quoting Weaver v. Graham, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17, 23 (1981)); State v. T.P.M., 189 N.J.Super. 360, *166 366-67, 460 A.2d 167, 170-71 (App.Div. 1983). The drafters of that clause understood that it would be unjust to prosecute a person for a crime or to impose a harsher sentence based on a law that was not on the books at the time of the commission of the act covered by the subsequent legislation. The Ex Post Facto Clause provides assurance that "federal and state legislatures [are] restrained from enacting arbitrary or vindictive legislation." Miller, supra, 482 U.S. at 429, 107 S.Ct. at 2451, 96 L.Ed.2d at 359. It also ensures that legislative enactments "give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." State v. Muhammad, 145 N.J. 23, 56, 678 A.2d 164, 181 (1996) (quoting Weaver, supra, 450 U.S. at 28-29, 101 S.Ct. at 964, 67 L.Ed.2d at 23). [Id. at 608-09, 843 A.2d 974.]
The United States Supreme Court has recognized four categories of prohibited ex post facto laws:
1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.
[Calder v. Bull, 3 U.S. [3 Dall.] 386, 390, 1 L.Ed. 648, 650 (1798) (Chase, J.).]
Accord Carmell v. Texas, 529 U.S. 513, 522, 120 S.Ct. 1620, 1627, 146 L.Ed.2d 577, 588 (2000) (change of law regarding corroboration of sexual offense violated ex post facto clause); State v. Pierce, 188 N.J. 155, 174, 902 A.2d 1195 (2006) (Albin, J., dissenting, believes removing "protection of public" factor from extended term criteria for cases on direct appeal violates the ex post facto clauses; majority does not); see also, e.g., California Dep't of Corr. v. Morales, 514 U.S. 499, 506, 115 S.Ct. 1597, 1602, 131 L.Ed.2d 588, 595 (1995); State v. Muhammad, supra, 145 N.J. at 56-57, 678 A.2d 164. We are, of course, concerned with the third and fourth categories, the latter because of the recent treatment of bifurcated penalty proceedings as subject to constitutional protections related to convictions. See Ring v. Arizona, 536 U.S. 584, 589, 122 S.Ct. 2428, 2432, 153 L.Ed.2d 556, 564 (2002) (defendant's right to jury trial includes right to have jury determine "any fact on which the legislature conditions an increase in their maximum punishment" and could result in the imposition of the death penalty); Arizona v. Rumsey, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984) (penalty proceeding is equivalent to trial of guilt for purposes of double jeopardy); Bullington v. Missouri, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981) (state cannot seek death penalty after first jury found insufficient proof to impose death penalty); Fortin II, supra, 178 N.J. at 643, 646, 843 A.2d 974 (treating aggravating factors "as though they were elements of the offense" and requiring "aggravating factors be submitted to the grand jury and returned in an indictment"). But see Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) (no ex post facto violation because new statute procedural and essentially ameliorative); Barnes v. Scott, 201 F.3d 1292 (10th Cir.), cert. denied, 530 U.S. 1231, 120 S.Ct. 2664, 147 L.Ed.2d 277 (2000) (no ex post facto violation because the addition of an intermediate punishment of life-without-parole was not more onerous *167 than the system with only a minimum and maximum penalty in place at the time of the offense as the addition of an intermediate punishment neither increased the maximum punishment for that crime, nor changed "the quantity or level of proof necessary to convict").
There are two elements to an ex post facto analysis. "[T]o fall within the ex post facto prohibition, two critical elements must be present: first, the law `must be retrospective, that is, it must apply to events occurring before its enactment'; and second `it must disadvantage the offender affected by it.'" Miller, supra, 482 U.S. at 430, 107 S.Ct. at 2451, 96 L.Ed.2d at 360 (quoting Weaver, supra, 450 U.S. at 29, 101 S.Ct. at 964, 67 L.Ed.2d at 23); accord State v. Natale, 184 N.J. 458, 490-92, 878 A.2d 724 (2005); see also Fortin II, supra, 178 N.J. at 608, 843 A.2d 974.
As to the first element, "[a] law is retrospective if it 'changes the legal consequences of acts completed before its effective date.'" Miller, supra, 482 U.S. at 430, 107 S.Ct. at 2451, 96 L.Ed.2d at 360 (quoting Weaver, supra, 450 U.S. at 31, 101 S.Ct. at 965, 67 L.Ed.2d at 24). As to the second element, "[i]t is `axiomatic that for a law to be ex post facto it must be more onerous than the prior law.'" Id. at 431, 107 S.Ct. at 2452, 96 L.Ed.2d at 361 (quoting Dobbert, supra, 432 U.S. at 294, 97 S.Ct. at 2299, 53 L.Ed.2d at 357); see also Natale, supra, 184 N.J. at 491, 878 A.2d 724; Fortin II, supra, 178 N.J. at 608, 843 A.2d 974.
With respect to sentencing changes in particular (the third Calder category) "the ex post facto prohibition . . . forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." Weaver, supra, 450 U.S. at 30, 101 S.Ct. at 965, 67 L.Ed.2d at 24.
The Constitution forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer. It is for this reason that an increase in the possible penalty is ex post facto, regardless of the length of the sentence actually imposed, since the measure of punishment prescribed by the later statute is more severe than that of the earlier.
[Lindsey v. Washington, 301 U.S. 397, 401, 57 S.Ct. 797, 799, 81 L.Ed. 1182, 1186 (1937) (citations omitted).][4]
"[W]hether the standards of punishment set up before and after the commission of an offense differ, and whether the later standard is more onerous than the earlier within the meaning of the [federal] constitutional prohibition, are federal questions . . ." Id. at 400, 57 S.Ct. at 798, 81 L.Ed. at 1185. To answer those questions, the *168 court must "compare the practical operation of the two statutes" to the defendant's crime. Ibid.
As already stated, the first element of the court's ex post facto analysis is to determine whether the new statute is intended to be retrospective. The 2007 amendment provides "[t]his act shall take effect immediately," L. 2007, c. 204, § 8, and we have no doubt the intended retroactivity should be interpreted as in Fortin II, supra, 178 N.J. at 606, 843 A.2d 974, in the context of the 2000 legislation which used the same language. We agree with the State (and defendant does not dispute) that the legislative intent was to abolish the death penalty and replace it with life imprisonment without the possibility of parole, thereby ensuring that defendants who otherwise would have been eligible for the death penalty would receive the highest possible sanction for their offenses. See, e.g., Senate Judiciary Committee Statement to Senate Committee Substitute for S. 171 and 2471 (May 10, 2007); Assembly Law and Public Safety Committee Statement to Assembly Committee Substitute for A. 3716 and 795 (Dec. 10, 2007); Governor's Remarks on Eliminating Death Penalty in New Jersey (Dec. 17, 2007).
The text of the new law effectuates that intent by taking the former death-eligible aggravating factors and declaring the finding of any one of them the basis for a sentence of life imprisonment without parole. Compare N.J.S.A. 2C:11-3b(4) with former N.J.S.A. 2C:11-3c(4). The Legislature's treatment of current death row inmates also indicates its intent that life-without-parole be the only sentencing alternative for defendants otherwise facing the death penalty. Specifically, had the Governor not commuted their sentences the day before the legislation was enacted, death row inmates still would have been subject to execution if they had not moved for re-sentencing pursuant to the new law. See N.J.S.A. 2C:11-3b; L. 2007, c. 204, § 2.
The second element of the ex post facto analysis requires consideration of whether the new law disadvantages the offender affected by it. In addressing this issue, we must consider whether the standards of punishment set up before and after the commission of an offense differ, and whether the later standard is more onerous than the earlier. Lindsey, supra, 301 U.S. at 400, 57 S.Ct. at 798, 81 L.Ed. at 1185. We must therefore "compare the practical operation of the two statutes" on defendant's crime. Ibid.; see also Dobbert, supra, 432 U.S. at 294, 97 S.Ct. at 2299, 53 L.Ed.2d at 357 (requiring Court to "compare the two statutory procedures in toto to determine if the new may be fairly characterized as more onerous"; upon such review if a change is determined to be ameliorative then application of the later statute would not violate ex post facto).
Under the former statute, including at the time of this offense, defendants such as Fortin, who had been indicted for a death-eligible offense, and as to whom the State had perfected its intent to pursue the death penalty, were subject to imposition of the death penalty if: (1) they were found guilty beyond a reasonable doubt of the death-eligible offense; (2) the jury found any one or more of the aggravating factors beyond a reasonable doubt; and (3) the jury found beyond a reasonable doubt that the aggravating factor or factors outweighed the mitigating factors. See former N.J.S.A. 2C:11-3c(3)(a); Fortin II, supra, 178 N.J. at 613-14, 843 A.2d 974.
Prior to December 17, 2007, if the jury could not reach a unanimous verdict, if the jury did not find any aggravating factors, or if the jury found that the aggravating factors did not outweigh the mitigating factors, defendants such as Fortin would *169 be subject to a sentence of thirty years without parole eligibility, or a specific term between thirty years and life imprisonment with thirty years of parole ineligibility for this offense which occurred in 1994. Former N.J.S.A. 2C:11-3c(3)(b), (c); Fortin II, supra, 178 N.J. at 613-14, 843 A.2d 974. If the offense occurred after the 2000 amendment or the ex post facto right was waived, defendants would be subject to life imprisonment without the possibility of parole if an aggravating factor was found to exist. See former N.J.S.A. 2C:11-3c(3)(b),(c); see also Fortin II, supra, 178 N.J. at 604-12, 843 A.2d 974.[5]
The aggravating factors that rendered defendants such as Fortin death-eligible before 2007 are exactly the same as the aggravating factors that now render them eligible for life imprisonment without the possibility of parole. And, the standard of proof is the same: the jury must find the aggravating factors beyond a reasonable doubt. Compare N.J.S.A. 2C:11-3b(4) with former N.J.S.A. 2C:11-3c(3),(4). See also Murtishaw v. Woodford, 255 F.3d 926, 961 (9th Cir.2001) (application to defendant of new death penalty statute, under which jury no longer had discretion to reject death penalty even if it found that aggravating factors outweighed mitigating factors, violated ex post facto clause), cert. denied, 535 U.S. 935, 122 S.Ct. 1313, 152 L.Ed.2d 222 (2002). However, as a result of the 2007 amendment, the defendant no longer has the right to present mitigating evidence. The right to present mitigating evidence in death penalty cases had been necessary to comply with United States Supreme Court precedent. See, e.g., Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973, 990 (1978) ("we conclude that the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death").
Labeling the 2007 amendments as merely "procedural" does not insulate them from ex post facto consideration. Collins v. Youngblood, 497 U.S. 37, 46, 110 S.Ct. 2715, 2721, 111 L. Ed.2d 30, 41 (1990) ("by simply labeling a law `procedural,' a legislature does not thereby immunize it from scrutiny under the Ex Post Facto Clause"). Certainly, if "a law is `merely procedural,'" there is no ex post facto problem, "if it simply alters the methods employed in determining the punishment to be imposed as opposed to working a substantive change in the quantum of punishment attached to the crime." Hameen v. Delaware, 212 F.3d 226, 242-43 (3d Cir. 2000), cert. denied, 532 U.S. 924, 121 S.Ct. 1365, 149 L.Ed.2d 293 (2001) (holding that new death penalty statute was constitutionally applied to defendant where it merely changed procedure for imposition of death penalty, with jury's ruling rendered only advisory and judge making ultimate determination). However, the issue before us relates to the period of time defendant must serve for murder, and is not "procedural."
The State argues that as life-without-parole is a less onerous sentence than death, the amended statute presents no ex post facto problem. Its argument is simpleyou *170 examine the maximum possible sentence, and if the new sentence maximum is no greater than the old, the statute imposes no unconstitutional burden on the defendant. And as previously noted, the State properly contends that the Legislature clearly intended to commit for life-without-parole all defendants who are guilty of capital murder where the State has also proven, beyond a reasonable doubt, at least one aggravating factor. Hence, according to the prosecutor, so long as defendant can no longer be subjected to the death penalty, there is no ex post facto violation.
However, the desire of the statutory drafters cannot trump the constitutional mandate. Moreover, the defendant does not challenge the constitutionality of the statute as amendedonly its application to this defendant, and the amendment would appear unassailable with respect to anyone who committed murder on or after its effective date of December 17, 2007.[6]
Under the State's argument a defendant convicted of a crime with a 100 year statutory maximum sentence, subject to parole eligibility after service of one-third of the sentence minus credits, could be sentenced, under an amendment following the date of offense, to a ninety-nine year sentence with no parole eligibility. The sentence maximum is clearly less onerous than the former maximum sentence. However, no one would contend that scenario would be lawful, even though neither defendant nor the court can find a decision, under state or federal law, which makes an ex post facto determination in the context of a minimum sentence or parole ineligibility term.[7]But see Barnes, supra, 201 F.3d 1292 (permitting "intermediate option" of life-without-parole when the alternative sentences had been life imprisonment or death).
The constitutional infirmity with the application of the new statute in defendant's case is that he can no longer present any mitigating factors which, although designed out of constitutional necessity to provide an escape from the death penalty, see Lockett, supra, 438 U.S. at 604, 98 S.Ct. at 2964-65, 57 L.Ed.2d at 990, resulted in a sentence with only a thirty year period before parole eligibility if the State did not prove the existence of both an aggravating factor or factors and that they outweighed the mitigating factors. Because consideration of mitigating factors is constitutionally mandated only with respect to the penalty phase of a capital prosecution, they are not part of the new statutory complex governing murder cases. Defendant can no longer present them under the new statutory complex to the trier of fact. Where an aggravating factor is now found to exist, defendant must serve life imprisonment without parole, even though at the time of defendant's offense, he could serve no more than thirty years before parole eligibility if the State did not prove the aggravating factor or factors existed and outweighed the mitigating resulting in a sentence to death. See State v. Biegenwald, 106 N.J. 13, 53-67, 524 A.2d 130 (1987). In this connection, it is important to remember that the mitigating factors included anything "relevant to the defendant's character or record or to the circumstances of the offense." Former N.J.S.A. 2C:11-3c(5)(h) (as it stood from 1982 to 2007). The factor was liberally *171 interpreted in terms of the "admissibility of mitigating evidence [so] that doubt should be resolved in the defendant's favor." State v. Timmendequas, 161 N.J. 515, 630, 737 A.2d 55 (1999). Moreover, that the jury instructions could not "preclude the jury from considering all possible mitigating circumstances and such sympathy as they may inspire." State v. Ramseur, 106 N.J. 123, 297, 524 A.2d 188 (1987)[8]; see also Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).
Fortin, who previously was sentenced to death, may well have received an unintended "break" as a result of this statutory amendment. However, others who were convicted of murder at the time of Fortin's offense and who would not have been sentenced to death due to the existence of mitigating factors, would also have to serve the entirety of their remaining life in prison without the possibility of parole even though mitigating factors existed and were not outweighed by the aggravating. The fact so few capital murder defendants were put to death[9] underscores the fact the amendment presents an enhanced burden to defendant as a capital offender who was found guilty of committing a murder in 1994. Accordingly, we hold that the December 17, 2007, statutory amendment cannot be constitutionally applied to defendant and he cannot be sentenced to life imprisonment without parole.
We add a few additional comments. We asked at oral argument whether defendant could be tried under the former death penalty complex, with the presentation of both aggravating and mitigating factors, and receive a sentence of life-without-parole if no mitigating factors were found or the aggravating were found to outweigh the mitigating. Cf. Natale, supra, 184 N.J. at 485-87, 878 A.2d 724 (elimination of presumptive terms to preserve constitutionality and maximize legislative intent). Independent of the fact that the Legislature sought to avoid such proceedings (even if no individual voir dire would be required) by the repeal of N.J.S.A. 2C:11-3c(5) and ability to present mitigating factors, the State declined to advance or advocate this remedy, albeit while asserting that there was no ex post facto problem. Accordingly, we do not further consider that remedy.
The irony of this case is that Fortin escaped the death penalty in Fortin II, in part, because the trial court at his first trial declined to permit him to argue that he faced life-without-parole as a means of avoiding the imposition of capital punishment.[10] Of significance to this round of his litigation, the Supreme Court held that because of the retroactive impact of the 2000 amendment, he could argue in the penalty phase that he could be sentenced by the judge to life-without-parole, but defendant had to waive his rights under the ex post facto clauses in order to so argue. Life-without-parole was perceived as a more onerous sentence than thirty years without parole, even though the ability to develop mitigating factors then still existed. The parties agree that defendant never had the opportunity to make the waiver and his expressions at prior proceedings *172 cannot be perceived as constituting a continuing waiver, for which he would receive no benefit, at present.
Finally, the parties before us have made clear that this decision has little practical impact as Fortin has been sentenced to a significant custodial term relating to his crime in Maine and Judge Mulvihill has indicated Fortin may be sentenced to consecutive sentences aggregating forty years before parole eligibility for the present case. We cannot comment on a sentence that has not yet been imposed. We only note that the parties agree it is unlikely Fortin will face the possibility of parole eligibility until he is over eighty-two years old.
And, as previously noted, while our ex post facto analysis applies to all capital murder cases involving offenses which occurred before December 17, 2007, those offenses which occurred after the NERA amendments to the Code on June 29, 2001, or any relevant provision relating to life-without-parole, would be subject to those provisions.[11]See N.J.S.A. 2C:11-3(b)(2),(3) as they provided before December 17, 2007.
The order under review is affirmed, and the matter is remanded for sentencing.
NOTES
[1] The indictment alleged capital murder, robbery, aggravated assault and two counts of felony murder, one premised on robbery and the other based on an aggravated sexual assault.
[2] We have not been presented with the trial transcript but have been advised, and have been presented with the verdict sheet reflecting, he was convicted of capital murder "by his own conduct," aggravated assault and felony murder incident to the aggravated assault. He was found not guilty of robbery or felony murder incident thereto. The State advises us, without dispute, that "[t]he facts established during the capital retrial were the same" as those established at the first trial. See Fortin II, supra, 178 N.J. at 559-65, 843 A.2d 974.
[3] The jury so found.
[4] We know that the quantum of the parole ineligibility term is irrelevant in terms of the sentence maximum for purposes of the Sixth Amendment. See Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); Pennsylvania v. Goldhammer, 474 U.S. 28, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985); State v. Abdullah, 184 N.J. 497, 509-10, 878 A.2d 746 (2005). We have not yet decided if a period of parole ineligibility can be increased if the aggregate sentence is not increased incident to resentencing upon reversal of a conviction or merger of offenses on appeal and the only surviving offense is subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. See, generally, State v. Rodriguez, 97 N.J. 263, 478 A.2d 408 (1984); State v. Young, 379 N.J.Super. 498, 879 A.2d 1196 (App.Div.2005), remanded on other grounds, 188 N.J. 269, 905 A.2d 878 (2006). In Lindsey, supra, 301 U.S. at 401, 57 S.Ct. at 799, 81 L.Ed. at 1186, the Court found the revision of a statute that provided for a maximum and minimum punishment, by making the maximum sentence compulsory, could not be applied to the defendant without violating the ex post facto clause. It did not address the minimum.
[5] Other amendments with respect to specific offenses may affect the sentence for a murder committed before the effective date of the 2007 amendment. Of course, since June 29, 2001, the No Early Release Act (NERA) requires that each defendant sentenced to life imprisonment serve sixty-three and three-quarters years before parole eligibility. See N.J.S.A. 2C:43-7.2b.
[6] We do not address any constitutional or other issues relating to the trial of murder cases involving offenses which are allegedly committed after the effective date, such as the need to have a bifurcated penalty proceeding with respect to at least some of the aggravating factors or the need to allege them in the indictment.
[7] See note 4, supra.
[8] Defendant had "the burden of producing evidence of the existence of any mitigating factors" but not "a burden with regard to the establishment of a mitigating factor." N.J.S.A. 2C:11-3c(2)(a); see also L. 1985, c. 178, § 2; State v. Biegenwald, supra, 106 N.J. at 53-66, 524 A.2d 130.
[9] As already noted, only eight defendants were on death row when the December 17, 2007, amendment was enacted. None were put to death since capital punishment was reenacted in 1982.
[10] The conviction was also reversed.
[11] While we do not address any ex post facto issue related to a capital murder occurring after the 2000 amendment, see N.J.S.A. 2C:11-3b(4), we note that life-without-parole flowed therein as a result of the finding of an aggravating factor irrespective of the mitigating.