969 A.2d 1133

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. STEVEN R. FORTIN, DEFENDANT–RESPONDENT.

Argued January 20, 2009—Decided May 12, 2009.

See also, 162 N.J. 517, 745 A.2d 509; 189 N.J. 579, 917 A.2d 746.

*Nancy A. Hulett,* Assistant Prosecutor, argued the cause for appellant (*Bruce J. Kaplan,* Middlesex County Prosecutor, attorney).

*Jacqueline E. Turner,* Assistant Deputy Public Defender, argued the cause for respondent (*Yvonne Smith Segars,* Public Defender, attorney).

Justice WALLACE delivered the opinion of the Court.

The issue in this appeal is whether the application to defendant of a recent amendment to *N.J.S.A.* 2C:11–3, which eliminated the death penalty and imposed a sentence of life without parole for certain murders, violates the *Ex Post Facto* Clause of the United States and New Jersey Constitutions. In 1995, defendant was charged with a capital murder committed the previous year. He subsequently was convicted and, in 2001, a jury found him subject to the death penalty. In defendant's direct appeal, this Court reversed and remanded for a new trial. At his retrial in 2007, defendant again was found guilty of capital murder. However, prior to the scheduled penalty phase of the trial, the Legislature amended the relevant statute and imposed a mandatory life-without-parole sentence in place of the death penalty. Thus, if the jury had decided that the State met its burden to impose a death sentence on defendant, the new law would require the imposition of a sentence of life without parole. The State filed a motion

seeking to have the trial court sentence defendant under the amended statute to life without parole.

The trial court denied the State's motion. It concluded that application of the life-without-parole sentence would violate the *Ex Post Facto* Clause of the state and federal constitutions because at the time of the offense, the maximum non-death sentence that could have been imposed was life with a thirty-year parole disqualifier. The Appellate Division granted the State's motion for leave to appeal and affirmed. We now affirm in part and reverse in part.

## I.

We briefly outline the facts and procedural history that are set forth at length in *State v. Fortin*, 178 *N.J.* 540, 559–68, 843 *A*.2d 974 (2004) (*Fortin II*).

On August 11, 1994, defendant sexually assaulted and murdered Melissa Padilla. Her body was discovered in a concrete pipe along Route 1 in Woodbridge Township, badly battered and stripped naked from the waist down. At the time of the attack, the evidence found at the scene did not connect defendant to the murder. In April 1995, defendant was apprehended in Maine for the sexual assault of a Maine State Trooper. After Woodbridge police detectives became aware of the parallels between the two crimes, they traveled to Maine to interview defendant. Evidence from the Maine attack ultimately was used to implicate defendant in Padilla's murder.

On September 6, 1995, a Middlesex County grand jury indicted defendant for capital murder, *N.J.S.A.* 2C:11–3a(1), (2); two counts of felony murder, *N.J.S.A.* 2C:11–3a(3); first-degree robbery, *N.J.S.A.* 2C:15–1; and first-degree aggravated sexual assault, *N.J.S.A.* 2C:14–2a. At the time of the offense, a defendant convicted of capital murder would be subject to the death penalty if the jury found that the State had proven beyond a reasonable doubt that: (1) one or more statutory aggravating factors were present; and (2) the aggravating factors outweighed the mitigat-

ing factors. *Fortin II, supra,* 178 *N.J.* at 598–99, 843 *A.*2d 974; *N.J.S.A.* 2C:11–3c(2), (3) (amended 2007). If the State did not satisfy both standards, the maximum sentence that a defendant could receive was life with a thirty-year parole disqualifier. *Fortin II, supra,* 178 *N.J.* at 599, 843 *A.*2d 974; *N.J.S.A.* 2C:11–3b, 3c (amended 2007).

Defendant's first capital trial took place between November 2000 and February 2001. In the guilt phase portion of that trial, the jury convicted defendant of capital murder, aggravated sexual assault, robbery, and both counts of felony murder. At the penalty phase, the jury unanimously found that the aggravating factors outweighed the mitigating factors beyond a reasonable doubt. As a result, the trial court sentenced defendant to death on the capital murder count. With regard to the non-capital convictions, the court merged the two felony murder counts into the capital murder conviction and sentenced defendant to twenty years imprisonment with ten years of parole ineligibility on the aggravated sexual assault conviction, and to a consecutive twenty years imprisonment on the first-degree robbery conviction. Both of those sentences were ordered to run consecutive to the twenty-year sentence defendant received in Maine for the crimes he committed against the State Trooper.

Defendant appealed, and this Court reversed his convictions and sentences and remanded for a new trial. *Fortin II, supra,* 178 *N.J.* at 581, 843 *A.*2d 974. This Court also addressed an *ex post facto* issue because on August 22, 2000, prior to the first capital trial, the Legislature adopted a law that allowed a sentence of life without parole in certain capital cases. *Id.* at 604, 843 *A.*2d 974. We concluded that the Legislature intended the 2000 amendment to apply to all capital murder cases proceeding to the penalty phase after the adoption of the law, *id.* at 607, 843 *A.*2d 974, and that unless defendant waived his *Ex Post Facto* Clause protections, application of the amendment to him would be unconstitutional, *id.* at 606, 843 *A.*2d 974. Moreover, this Court found no

impediment to defendant waiving his constitutional rights under the *Ex Post Facto* Clause. *Id.* at 608–12, 843 *A.2d* 974.

Following an interlocutory appeal related to the admission of "other crimes" evidence, *see State v. Fortin,* 189 *N.J.* 579, 917 *A.2d* 746 (2007) (*Fortin III*), defendant was tried again in 2007. On November 29, 2007, the guilt phase jury convicted defendant of capital murder, felony murder, and aggravated sexual assault, and found him not guilty of the remaining charges.

On December 17, 2007, two weeks after the jury returned its guilty verdict but prior to jury selection for the penalty phase, the Legislature amended the murder statute to eliminate the death penalty and substitute a sentence of life without parole. *See L.* 2007, *c.* 204, § 1 (codified as amended at *N.J.S.A.* 2C:11–3). The previous day, the Governor commuted the death sentences to life without parole for the eight capital defendants then on death row. Under the amended statute, a defendant will receive a sentence of life without parole if the State demonstrates beyond a reasonable doubt that one or more of the statutory aggravating factors is present. *N.J.S.A.* 2C:11–3b(4). The amended statute does not permit the defendant to present mitigating factors.

On January 11, 2008, the State filed a motion to sentence defendant under the amended law to life imprisonment without parole. Defendant opposed the State's motion. On February 14, 2008, the trial court denied the motion, finding that the Legislature intended the new statute to apply to every defendant whose case had not yet proceeded to the penalty phase regardless of when his crime was committed, and that it was undisputed that life without parole is a more onerous punishment than life with a parole disqualifier of thirty years. Citing to *Fortin II,* the trial court found that it would violate the *Ex Post Facto* Clause of the federal and state constitutions to sentence defendant under the new law unless he waived his *ex post facto* protections.

The Appellate Division granted the State's motion for leave to appeal. In a published decision, the panel affirmed the trial court's ruling, but on different grounds. *State v. Fortin,* 400

*N.J.Super.* 434, 452, 948 *A.*2d 160 (2008). It held that the constitutional infringement was the elimination of defendant's right to present mitigating factors in the penalty phase, which resulted in a procedural change to defendant's detriment. *Id.* at 451, 948 *A.*2d 160.

Notably, the panel mentioned, but opted not to consider, the remedy of preserving the former death penalty complex, with the presentation of both aggravating and mitigating factors, and then approving the sentence of life without parole if the jury found that defendant would have qualified for a death sentence. *Id.* at 452–53, 948 *A.*2d 160. The panel did not consider that remedy because it appeared to conflict with the legislative intent, and because the State "declined to advance or advocate [it]." *Id.* at 453, 948 *A.*2d 160.

We granted the State's motion for leave to appeal. 196 *N.J.* 340, 953 *A.*2d 760 (2008).

## II.

The State argues that sentencing defendant to life without parole would not violate the *Ex Post Facto* Clause because the amended statute is ameliorative and eliminates death as a sentencing option. The State maintains that application of the amended statute to defendant would not be unconstitutional because the new law replaces the death penalty with life without parole, which is a lesser sentence than death. In essence, the State asserts that the courts below wrongly compared the thirty-year parole disqualifier provision in the earlier statute with the life-without-parole provision in the amended statute to find an increased penalty, when instead the comparison should be between the former maximum penalty of death and the current less severe punishment of life without parole.

Further, the State asserts that the elimination of mitigating evidence in the current penalty proceedings is inconsequential because the new law does not reduce the quantum of evidence that the State must produce for the court to sentence defendant to life without parole. Alternatively, the State claims that if the new law

is unconstitutional as applied to defendant, then the appropriate remedy is a "hybrid penalty phase" that maintains the substituted penalty of life without parole but allows defendant to argue for something less than the maximum sentence by presenting mitigating evidence.

Defendant argues that the courts below correctly ruled that applying the mandatory term of life without parole to him would violate the *Ex Post Facto* Clause because the new law makes the punishment for his crime more burdensome. Defendant notes that in *Fortin II, supra,* 178 *N.J.* at 605, 843 *A.2d* 974, this Court declared that both the State and defendant agreed that the *Ex Post Facto* Clause barred the application of a life-without-parole sentence under the 2000 amendment unless defendant waived the clause's protections. Defendant asserts that the Court's *ex post facto* analysis focused on the fact that the mandatory minimum term increased from thirty years to life.

Defendant contends that the Appellate Division did not need to resort to the argument that the elimination of mitigating factors rendered the new law unconstitutional because the increase in the mandatory minimum term violated the *Ex Post Facto* Clause. Furthermore, defendant argues that even if the procedural defect noted by the Appellate Division is remedied through a separate hearing in which aggravating and mitigating factors are presented to a jury, there is still an *ex post facto* violation if defendant is subject to life without parole under the new law. Defendant maintains that although the Legislature may have intended the life-without-parole sentence to apply retroactively to all defendants who had not been sentenced at the time of the amendment, regardless of the date of the crime, this Court found in *Fortin II* that legislative intent cannot trump constitutional protections.

### III.

### A.

■ Both the United States and New Jersey Constitutions forbid the legislative branch from passing *ex post facto* laws. *U.S.*

*Const.* art. 1, § 9, cl. 3; *U.S. Const.* art. 1, § 10, cl. 1; *N.J. Const.* art. IV, § 7, ¶ 3; *see also Doe v. Poritz,* 142 *N.J.* 1, 42–43 n. 10, 662 *A.*2d 367 (1995) (holding that New Jersey should interpret its *Ex Post Facto* Clause in manner consistent with United States Supreme Court's interpretation of federal clause). The purpose of the *Ex Post Facto* Clause is "to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver v. Graham,* 450 *U.S.* 24, 28–29, 101 *S.Ct.* 960, 964, 67 *L.Ed.*2d 17, 23 (1981). The United States Supreme Court concisely summarized the type of law that the *Ex Post Facto* Clause was intended to prohibit:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender.
>
> [*Miller v. Florida,* 482 *U.S.* 423, 429, 107 *S.Ct.* 2446, 2450, 96 *L.Ed.*2d 351, 359 (1987) (quoting *Calder v. Bull,* 3 *U.S.* (3 *Dall.*) 386, 390, 1 *L.Ed.* 648, 650 (1798)).]

■ Recently, we explained that for a criminal law to be *ex post facto,* it must satisfy two essential requirements: First, "it must be retrospective, that is, it must apply to events occurring before its enactment," and second, "it must disadvantage the offender affected by it." *State v. Natale,* 184 *N.J.* 458, 491, 878 *A.*2d 724 (2005) (quoting *Weaver, supra,* 450 *U.S.* at 29, 101 *S.Ct.* at 964, 67 *L.Ed.*2d at 23); *see also Dobbert v. Florida,* 432 *U.S.* 282, 294, 97 *S.Ct.* 2290, 2299, 53 *L.Ed.*2d 344, 357 (1977) ("It is axiomatic that for a law to be *ex post facto* it must be more onerous than the prior law.").

In *Lindsey v. Washington,* an amended Washington criminal statute imposed a mandatory fifteen-year sentence for grand larceny, when at the time the defendant committed the crime, fifteen years was the maximum sentence. 301 *U.S.* 397, 400, 57 *S.Ct.* 797, 798–99, 81 *L.Ed.* 1182, 1185 (1937). In finding that the new mandatory sentence was *ex post facto* as applied to the defendant, the United States Supreme Court stated:

> We need not inquire whether this is technically an increase in the punishment annexed to the crime. It is plainly to the substantial disadvantage of petitioners to be deprived of all opportunity to receive a sentence which would give them freedom from custody and control prior to the expiration of the 15-year term.
>
> [*Id.* at 401–02, 57 *S.Ct.* at 799, 81 *L.Ed.* at 1186 (citation omitted).]

In *Miller, supra,* the United States Supreme Court determined that a sentencing statute was *ex post facto* as applied to the defendant because it increased the presumptive sentence by two years. 482 *U.S.* at 431–32, 107 *S.Ct.* at 2452, 96 *L.Ed.*2d at 361. The Court found that the new statute imposed a greater punishment on the defendant, despite the fact that the defendant could not definitively show that he would have received a lesser sentence under the old statute, because " 'one is not barred from challenging a change in the penal code on *ex post facto* grounds simply because the sentence he received under the new law was not more onerous than that which he might have received under the old.' " *Id.* at 429, 107 *S.Ct.* at 2452, 96 *L.Ed.*2d at 361 (quoting *Dobbert, supra,* 432 *U.S.* at 300, 97 *S.Ct.* at 2302, 53 *L.Ed.*2d at 360). The Court concluded that because the new statute increased the likelihood of a longer sentence, it was unconstitutional as applied to the defendant. *Id.* at 432–33, 107 *S.Ct.* at 2452, 96 *L.Ed.*2d at 361–62 (citing *Lindsey, supra,* 301 *U.S.* at 401–02, 57 *S.Ct.* at 798–99, 81 *L.Ed.* at 1185–86).

## B.

We turn now to apply those principles to this case. We have no doubt that the first element of an *ex post facto* law—that the law must be retrospective—is satisfied. The parties do not dispute that the Legislature clearly intended to retroactively apply the amended sentencing statute to defendants who committed crimes prior to 2007. Instead, the parties disagree as to the second element: whether the new law disadvantages the defendant.

Defendant does not challenge the premise that life without parole is a less severe punishment than death. Instead, defendant asserts that because the death penalty has been eliminated in this state, he can only receive a sentence of: (1) thirty years to life

with a thirty-year parole disqualifier; or (2) life without parole. Defendant contends that the new statute disadvantages him by eliminating the thirty-year parole disqualifier. On the other side, the State argues that life without parole is less serious than death, and therefore, the new law is not more onerous than the former murder statute.

This case presents us with a unique set of circumstances. Although the guilt phase jury found defendant guilty of murder, a jury never decided whether the State met its burden for the imposition of a death sentence under the former statute because defendant's trial had not yet proceeded to the penalty phase when the murder statute was amended. Thus, we disagree with the State that at this stage in the proceedings, the death sentence is the benchmark in determining whether the amended law presents an increase in punishment.

The amended law imposes a mandatory life-without-parole sentence under certain circumstances, whereas the law in effect at the time of the offense provided for a sentence of either death or a term of thirty years to life with a thirty-year parole disqualifier.[1] Obviously, considering only the non-death sentences, life without parole is a greater sentence than thirty years to life with a thirty-year parole disqualifier. Therefore, if the jury had concluded that defendant should receive a non-death sentence under the former statute, then the application of the new law to him would violate the *Ex Post Facto* Clause.

Nevertheless, we would find support for the State's position that there is no constitutional impediment to imposing the new statute on defendant if the trial had advanced to the penalty phase under the former statute and the jury concluded that the aggravating factors outweighed the mitigating factors beyond a reasonable

---

[1] As noted, this Court held that the 2000 amendment to the statute that added life without parole as an additional option could only be applied to defendant if he waived his *Ex Post Facto* Clause protections. *Fortin II, supra,* 178 *N.J.* at 605, 843 *A.2d* 974.

doubt. In that event, defendant would have been subject to a sentence of death under the former statute, and the imposition of a life-without-parole sentence under the amended statute would not be greater than that sentence.

The Legislature expressly addressed the procedures for those defendants previously sentenced to death under the prior statute who wanted the benefit of a life-without-parole sentence. *See* Senate Judiciary Committee, Statement to Senate Bill Nos. 171 & 2471 (May 10, 2007). However, the Legislature did not expressly provide for individuals who, like defendant, committed the offense while the former statute was in effect but had not yet reached the penalty phase of the trial when the law was amended.

■ In our view, this case does not require an "all or nothing" approach concerning the application of the *Ex Post Facto* Clause. Our jurisprudence has been influenced by the principle that, whenever possible, we should avoid interpreting a legislative enactment in a way that would render it unconstitutional. *State v. Johnson*, 166 *N.J.* 523, 540–41, 766 *A.2d* 1126 (2001) ("The power and obligation inherent in this State's constitutional doubt doctrine begins with the assumption that the [L]egislature intended to act in a constitutional manner." (internal quotations omitted)), *overruled in part on other grounds by State v. Stanton*, 176 *N.J.* 75, 90, 820 *A.2d* 637 (2003). Just as important, "[w]hen necessary, courts have engaged in 'judicial surgery' to save an enactment that otherwise would be constitutionally doomed." *Natale, supra,* 184 *N.J.* at 485–86, 878 *A.2d* 724 (quoting *Town Tobacconist v. Kimmelman*, 94 *N.J.* 85, 104, 462 *A.2d* 573 (1983) ("When a statute's constitutionality is doubtful, a court has the power to engage in 'judicial surgery' and through appropriate construction restore the statute to health."); *N.J. State Chamber of Commerce v. N.J. Election Law Enforcement Comm'n*, 82 *N.J.* 57, 75, 411 *A.2d* 168 (1980) (noting that "[i]n appropriate cases, a court has the power to engage in 'judicial surgery' or the narrow construction of a statute to free it from constitutional doubt or defect")). In short,

we should interpret the amended statute in a manner that would avoid constitutional infirmities, if we fairly can do so.

■ We believe that if the Legislature had contemplated this issue, it would have sought to avoid a constitutional infirmity by maintaining the penalty phase procedures under the former statute for a determination of whether defendant was subject to a death sentence. Thus, we conclude that the State should proceed to the penalty phase of defendant's trial as if the Legislature had not amended the law. At that penalty phase trial, the State will have the burden of proof to convince the jury beyond a reasonable doubt that the aggravating factors outweigh the mitigating factors. If the jury finds that the State has met its burden of proof to impose a death sentence, then we conclude that there is no *ex post facto* violation in the application to defendant of the amended statute's life-without-parole sentence because that sentence would be less than death. On the other hand, if the jury finds in favor of a non-death sentence, then we cannot avoid the conclusion that application of the amended statute to defendant would violate the *Ex Post Facto* Clause because a sentence of life without parole would be greater than the maximum non-death sentence allowed at the time of the offense: life with a thirty-year parole disqualifier.

■ Moreover, we find that subjecting defendant, and others who may be similarly situated, to the former statute's penalty proceedings does not result in an injustice or lack of fair warning. We are guided by the United States Supreme Court's decision in *Dobbert, supra*, 432 *U.S.* 282, 97 *S.Ct.* 2290, 53 *L.Ed.*2d 344. In that case, the defendant was convicted of murders in Florida that were alleged to have occurred in 1971 and 1972. *Id.* at 288, 97 *S.Ct.* at 2296, 53 *L.Ed.*2d at 353. During that period, the relevant Florida statute provided that a person convicted of capital murder would receive a death sentence unless a majority of the jury recommended mercy. *Ibid.* However, that statute was declared unconstitutional by the Florida Supreme Court in July 1972. *Ibid.* Thereafter, Florida enacted a new death penalty procedure that

requires a separate sentencing hearing for the admission of aggravating and mitigating circumstances. *Id.* at 290–91, 97 *S.Ct.* at 2297, 53 *L.Ed.*2d at 355. Under the new procedure, the jury renders a decision that is not binding on the judge, who must also weigh the aggravating and mitigating circumstances and make the ultimate decision whether or not to impose death. *Id.* at 291, 97 *S.Ct.* at 2297, 53 *L.Ed.*2d at 355.

As part of his *ex post facto* argument, the defendant maintained that because the death penalty statute in existence at the time of the offense was declared unconstitutional, there was "no 'valid' death penalty in effect in Florida as of the date of his actions." *Id.* at 297, 97 *S.Ct.* at 2300, 53 *L.Ed.*2d at 358. In rejecting that argument, the Court asserted:

> Here the existence of the statute served as an "operative fact" to warn the [defendant] of the penalty which Florida would seek to impose on him if he were convicted of first-degree murder. This was sufficient compliance with the *ex post facto* provision of the United States Constitution.
>
> [*Id.* at 298, 97 *S.Ct.* at 2300, 53 *L.Ed.*2d at 359.]

That same reasoning applies with even greater force here. The death penalty statute existing at the time of the offense clearly served notice of the Legislature's view "of the severity of murder and of the degree of punishment" that might be imposed. *Id.* at 305, 97 *S.Ct.* at 2305, 53 *L.Ed.*2d at 363. Thus, the statute in existence at the time defendant committed the crimes and at the time of his guilt phase trial provided ample notice to defendant that the State would seek to impose a sentence of death.

Additionally, it bears repeating that at defendant's first trial, he was convicted and sentenced under the version of the statute existing at the time of the offense, and in the second trial he was found guilty under that same statute. We are faced with the issue before us in large part due to a chronological anomaly; the penalty phase of the second trial under the old statute was not completed before the Legislature eliminated the death sentence.

In summary, we adopt this hybrid procedure as a remedy to best preserve the Legislature's goal in enacting the statute.

We reject the view that all applications of the amended law to defendant would be unconstitutional. Because defendant had prior notice of the former statute's death penalty procedure, we find no impediment to the State proceeding to the penalty phase of the trial under the former statute. If the jury concludes that the State has proven beyond a reasonable doubt that the aggravating factors outweigh the mitigating factors, rendering defendant subject to a death sentence, then there would be no violation of the *Ex Post Facto* Clause for the court to impose a life-without-parole sentence under the amended statute. If the jury rejects the State's position, then in order to avoid an unconstitutional application of the new statute, defendant must be sentenced under the former statute as it existed at the time of the offense, i.e. thirty years to life with a thirty-year parole disqualifier. Of course, if defendant waives the protections to which he is entitled under the *Ex Post Facto* Clause, the State may proceed to impose a sentence of life without parole. *See Fortin II*, 178 *N.J.* at 612, 843 *A.*2d 974.

## IV.

We now affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

Justice ALBIN, dissenting.

Defendant Steven Fortin has been convicted of a savage and vile crime. But even the most despised of criminal defendants is entitled to the protections afforded by our constitution. Today, in clear violation of the *Ex Post Facto* Clauses of the Federal and State Constitutions, the majority allows defendant to be punished under a newly enacted and judicially reconfigured sentencing law that did not exist at the time defendant murdered his victim. Although no one will shed a tear for this defendant who is now exposed to a sentence greater than the one permitted under the law existing when he committed the crime, sadly, the majority's decision represents a tear in the fabric of our constitutional

jurisprudence. In straining to reach its result, the majority overrules the trial court and a three-judge appellate panel, *see State v. Fortin*, 400 *N.J.Super.* 434, 948 *A.*2d 160 (App.Div.2008), and completely disregards a 2004 decision of this Court that involved the very defendant in this case, *see State v. Fortin (Fortin II)*, 178 *N.J.* 540, 604–12, 843 *A.*2d 974 (2004). Because I believe that suspending a fundamental constitutional right, even to one as unsympathetic as this defendant, is too high a price to pay, I respectfully dissent.

## I.

Both the United States and New Jersey Constitutions prohibit *ex post facto* legislation. *U.S. Const.* art. I, § 10, cl. 1. ("No State shall ... pass any Bill of Attainder, [or] ex post facto Law...."); *N.J. Const.* art. IV, § 7, ¶ 3 ("The Legislature shall not pass any bill of attainder, [or] ex post facto law...."). An *ex post facto* law is a criminal or penal statute that applies retroactively "to events occurring before its enactment, and [that] ... disadvantage[s]" the person against whom it is applied. *Weaver v. Graham*, 450 *U.S.* 24, 29, 101 *S.Ct.* 960, 964, 67 *L.Ed.*2d 17, 23 (1981); *see also State v. Natale*, 184 *N.J.* 458, 491, 878 *A.*2d 724 (2005). Those who drafted the *Ex Post Facto* Clauses "understood that it would be unjust to prosecute a person for a crime or to impose a harsher sentence based on a law that was not on the books at the time of the commission of the act covered by the subsequent legislation." *Fortin II, supra*, 178 *N.J.* at 608, 843 *A.*2d 974. The majority's decision in this case cannot be squared with those general principles or with the specific question that this Court answered in *Fortin II*.

Defendant was charged with the 1994 capital murder of Melissa Padilla. Based on the then-applicable statute, if convicted of capital murder, defendant faced the sentence of death, provided that, in the penalty-phase proceedings, the jury unanimously found beyond a reasonable doubt the existence of at least one aggravating factor and later unanimously concluded beyond a

reasonable doubt that the aggravating factor or factors outweighed any mitigating factors. *See L.* 1993, *c.* 206, § 1. If the jury did not make the findings necessary for the imposition of the death penalty, then the trial judge had two available sentencing options—either to sentence defendant to a thirty-year term during which he would be ineligible for parole or to a term between thirty years and life imprisonment during which he would be ineligible for parole for thirty years. *Ibid.* At the time, there was no sentencing option in our criminal statutes that permitted a trial judge to impose a life sentence without parole ineligibility.

In August 2000, six months before the penalty-phase proceedings in defendant's first trial, the Legislature enacted a law—to " 'take effect immediately' "—that allowed a sentence of life without parole in certain capital cases. *Fortin II, supra,* 178 *N.J.* at 604, 843 *A.*2d 974 (quoting *L.* 2000, *c.* 88). At his first trial, defendant was convicted by a jury of capital murder. *Id.* at 567, 843 *A.*2d 974. Because "[d]efendant undoubtedly believed that if the jury were instructed on the life-without-parole option, it might be less inclined to return a death verdict," he requested that the trial court "instruct the jury in accordance with the newly-enacted provision." *Id.* at 604, 843 *A.*2d 974. No one disputed that the newly enacted life-without-parole provision imposed a more severe sentence than the pre-existing law or that "the *Ex Post Facto* Clause barred the application of the life-without-parole provision." *Id.* at 605, 843 *A.*2d 974. The primary issue was whether a defendant could voluntarily waive, like any other constitutional right, the *ex post facto* prohibition. *Id.* at 606, 843 *A.*2d 974. We concluded that defendant should have been permitted to waive the protections provided by the *Ex Post Facto* Clause and to be bound by the sentencing provisions of the new law. *Id.* at 608–09, 611–12, 843 *A.*2d 974.

*Fortin II* is instructive to the present case because, there, even when defendant was facing the penalty of death, we accepted that the application of a newly enacted life-without-parole sentencing provision constituted an *ex post facto* law. *Id.* at 607–08, 612, 843

A.2d 974. We took that position even though, presumably, defendant would have been advantaged by the new law that might well have diminished the likelihood that a jury would impose the death penalty. *Id.* at 604–05, 843 A.2d 974.

In light of *Fortin II,* I do not see how the majority can rationalize its present holding. Here, the newly enacted law repeals the death penalty while exposing defendant to a sentence of life without parole—a sentencing alternative not on the books when he committed the crime. If the State and this Court did not accept in *Fortin II* that the life-without-parole provision at defendant's first trial was a lesser sentence than death—therefore rendering the *ex post facto* argument a nullity—then why does that position resonate now? Certainly, the State would have had a better argument for characterizing the life-without-parole provision as non-*ex post facto* in *Fortin II,* but then, unlike today, the State was intent on maximizing defendant's potential for receiving a death sentence. The State is still intent on maximizing defendant's sentencing exposure, but now it is inconvenient to call the life-without-parole provision an *ex post facto* law.

Both the trial court and Appellate Division recognize—as do I—that the statute in question, which permits the imposition of a more severe mandatory minimum sentence than the law allowed before defendant committed the crime, is a classic example of *ex post facto* legislation. The cases cited by the majority support that proposition. *Ante* at 623–24, 626–29, 969 A.2d 1135–36, 1137–39 (citing *Miller v. Florida,* 482 *U.S.* 423, 107 *S.Ct.* 2446, 96 *L.Ed.*2d 351 (1987) (finding statute that increased presumptive sentence range *ex post facto* as applied to defendant); *Weaver, supra,* 450 *U.S.* 24, 101 *S.Ct.* 960, 67 *L.Ed.*2d 17 (finding statute restricting gain-time credit for good conduct in effect increased length of prison term and so was *ex post facto* as applied to defendant); *Lindsey v. Washington,* 301 *U.S.* 397, 57 *S.Ct.* 797, 81 *L.Ed.* 1182 (1937) (finding that statute increasing discretionary maximum sentence to mandatory maximum is *ex post facto* as applied to defendant); *Fortin II, supra,* 178 *N.J.* 540, 843 A.2d 974).

Although the Legislature could have conditioned the repeal of the potential punishment of death on defendant's waiver of the *ex post facto* application of a life-without-parole sentence, it did not do so. Our Federal and State Constitutions declare that the Legislature does not have the power to retroactively apply a criminal or penal law that disadvantages defendant or exposes him to a more onerous sentence. *Natale, supra,* 184 *N.J.* at 490–91, 878 *A.*2d 724. For *ex post facto* purposes, I do not believe that life without parole in a maximum-security prison can be equated with death, and therefore it is meaningless to suggest that life imprisonment under horrid conditions is a less severe or onerous punishment. In one case, a defendant awaiting execution on death row was willing to waive any further right of appeal because, apparently, he did not view life-long incarceration as less onerous than death. *See State v. Martini,* 144 *N.J.* 603, 605, 609, 677 *A.*2d 1106 (1996), *cert. denied,* 519 *U.S.* 1063, 117 *S.Ct.* 699, 136 *L.Ed.*2d 621 (1997).

## II.

In my opinion, this case is not consistent with our constitutional jurisprudence. When the retroactive application of a life-without-parole provision seemingly benefited defendant because it might have spared him a death sentence, it was deemed *ex post facto* legislation by the State, but when the same type of retroactive life-without-parole provision disadvantages defendant, as in the present case, the State can see no *ex post facto* bar. This Court should not place a stamp of approval on such a flip-flop approach to constitutional interpretation.

Given the length of defendant's expected sentence under the old law, when combined with the twenty-year sentence imposed by the authorities in Maine, defendant would likely serve the rest of his life in prison without the end-run around the *Ex Post Facto* Clause.[1] I respectfully dissent because this Court should not be

---

[1] The Appellate Division noted that "the parties agree[d that] it is unlikely [defendant] will face the *possibility* of parole eligibility until he is over eighty-two

fashioning a constitutional doctrine inconsistent with well-established *ex post facto* jurisprudence merely to catch within its grasp this one defendant.

Justice LONG joins in this opinion.

*For affirmance in part/reversal in part/remandment*—Chief Justice RABNER and Justices LaVECCHIA, WALLACE, RIVERA–SOTO and HOENS—5.

*Dissenting*—Justices LONG and ALBIN—2.

---

years old." *Fortin, supra,* 400 *N.J.Super.* at 454, 948 *A.2d* 160 (emphasis added). Defendant, who has been incarcerated since 1995, will turn forty-five years old this year.