**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3679-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

EDWARD M. PLAZA, a/k/a
EDWARD M. PLAZE,
EDDY ARENAS, and
ED ARENAS,

     Defendant-Appellant.

_____

Submitted December 6, 2023 – Decided January 26, 2024

Before Judges Firko and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 16-09-0623.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Lauren Bonfiglio, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Edward M. Plaza appeals from a May 13, 2022 Law Division order entered by Judge Stacey K. Boretz denying his third petition for post-conviction relief (PCR) without an evidentiary hearing. After carefully reviewing the record in light of the governing legal principles, we affirm substantially for the reasons set forth in Judge Boretz's twenty-four-page written opinion.

I.

Defendant was charged by indictment with second-degree reckless vehicular homicide, N.J.S.A. 2C:11-5(a), in connection with a crash that occurred on May 21, 2016. The collision resulted in the death of defendant's girlfriend, Valerie Edwards, who was sitting in the front passenger seat. Defendant also was charged by summons with driving while intoxicated (DWI), N.J.S.A. 39:4-50.

A jury trial was held in September and October of 2018. Defendant moved to instruct the jury on the lesser included offense of third-degree strict liability vehicular homicide, N.J.S.A. 2C:11-5.3. N.J.S.A. 2C:11-5.3 became effective on July 21, 2017, more than a year after the fatal crash. Judge Daniel denied the

defense motion because defendant refused to waive his ex post facto rights. The trial judge explained:

> The defendant—it's undisputed the defendant … is not willing to waive the [E]x [P]ost [F]acto [C]lause. Our New Jersey Constitution provides that the legislature shall not pass any bill of attained or ex post facto law. The U.S. Constitution provides no state shall pass any bill of attained or ex post facto law. The language in each provision that is in the New Jersey Constitution and the U.S. Constitution is practically identical. The Court in [State v. Fortin, 198 N.J. 619, 626-27 (2009)] indicated that we interpret the state provision as providing as at least as much protection as its federal counterpart. Now, it's also, as spelled out in Fortin, well established that a defendant may waive a constitutional right. . . .
>
> The State in this case asserts that it's clear from the analysis in Fortin that if a defendant wishes to have a jury charge with a new law, whether it be a lesser-included offense or a related offense, he may do so only if he is willing to enter a waiver subjecting himself to that law. The State's argument in this case is that although it's within defendant's right to waive the protections of the [E]x [P]ost [F]acto [C]lause, he has indicated he is not willing to do so.

The following colloquy then occurred to confirm defendant understood the consequences of his decision not to waive his ex post facto rights:

> ASST. PROSECUTOR: Judge . . . I'd just like one thing for the record. I know that the defendant had in the course of sort of litigating this motion and prosecuting it indicated that he would not be inclined to waive the [E]x [P]ost [F]acto [C]lause. But now that Your Honor has ruled and made the decision, could we perhaps voir

3

dire the defendant to make sure that that remains his intent?

THE COURT: All right . . . sir, do you understand that—do you understand my decision thus far?

DEFENDANT: Yes.

THE COURT: All right. And have you had the opportunity to speak to your lawyer—

DEFENDANT: Yes.

THE COURT: —about this choice that you have?

DEFENDANT: Yes.

THE COURT: Okay. Again, our current law, the constitution[s] of the State of New Jersey and the United States of America, prohibits one being charged with the commission of an offense the prohibited conduct being part of a law that was enacted after the alleged commission of the offense. In other words, you're alleged to have engaged in criminal behavior on May. . . the 21st?

ASST. PROSECUTOR: Yes, Your Honor.

THE COURT: It's the 21st, 2016. Therefore, a law was adopted by—passed by the legislature effective July 1st, 2017. It's called criminal homicide strict liability. That law was passed after May 21st, 2016. You have constitutional protections and the New Jersey Constitution provides that the legislature should not pass any ex post facto law. Application of this law, 2C:11-53, strict liability, vehicular homicide, if that were to be applied to you without your consent, without your waiving the [E]x [P]ost [F]acto [C]lause of the

A-3679-21

constitution, that would be in violation of the constitution. You have the right to waive certain constitutional rights. And based on what your lawyer told me . . . you've elected not to waive the [E]x [P]ost [F]acto [C]lause as it would apply to you. Do you understand all of that?

DEFENDANT: Yes, that's correct. Yeah, that's correct.

In addition to this colloquy between defendant and the judge, defendant's trial counsel confirmed he had explained ex post facto protections to his client:

DEFENSE COUNSEL: Judge, I did discuss with my client the issue of ex post facto law and [N.J.S.A. 2C:11-5.3].

THE COURT: Yes.

DEFENSE COUNSEL: —and this motion prior to ever filing it. At that time I explained to [defendant] what I thought the options were, what the potential choice could be for the [c]ourt, for him. He has indicated to me as late as this past week, Judge, on Friday that if the motion were denied . . . that he was not going to waive his ex post facto protections. And he told me that he understood that the—in response to my questions, that he understood that would mean that he would be going forward with his trial and the jury then deliberating only the charge that was in the indictment.

THE COURT: Okay. Is what your lawyer just said accurate?

DEFENDANT: Yes.

THE COURT: Do you need more time to talk to your lawyer about this issue now?

5 A-3679-21

DEFENDANT: No.

The matter proceeded to trial. Defendant testified on his own behalf, explaining he was in a relationship with Edwards for approximately twenty years. He testified he and Edwards had a couple of "cocktails" at their home on the day on the crash. After drinking, they were going to pick up a prescription on their way to a BYOB restaurant in Red Bank. Defendant claimed that an open beer found in the car belonged to Edwards.

On the way to the restaurant, defendant pulled over so Edwards could call the pharmacy to check if her prescription had been filled and to touch up her makeup. When he put his car back into drive, another car came towards him from the opposite direction and into his lane. Defendant testified, "I put it in drive . . . a car came in our lane. And [Edwards] grabbed the steering wheel and that's when airbags came out. As soon as she grabbed it, that's all I remember." He reiterated, "I was pulled over and just proceeded, and then she grabbed the steering wheel and then I must have jumped the curb. That's the only thing I remember."

The jury returned a guilty verdict on the second-degree vehicular homicide count. The trial court, sitting as the trier of fact on the non-indictable charge, also found defendant guilty of DWI. Defendant was sentenced on the

6

vehicular homicide conviction to eight years in prison subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.

In his direct appeal, defendant claimed Judge Daniel erred in denying his motion to have N.J.S.A. 2C:11-5.3 charged as a lesser included offense. Defendant argued there was a rational basis to include the charge and, therefore, doing so would not violate the Ex Post Facto Clause.

We affirmed defendant's conviction and sentence in an unpublished decision, State v. Plaza, No. A-2042-18 (App. Div. Feb. 19, 2021). We determined "[a]t the time of defendant's offense, the act of driving while intoxicated and causing the death of another did not render defendant strictly liable for that death." Id. at 4. We noted the strict liability statute would have precluded defendant from presenting his defense—that Edwards contributed to her own death by "grabbing" the steering wheel.[1] Ibid. We further held that without a waiver by defendant, a conviction on the strict liability statute would violate the Ex Post Facto Clause. Ibid. Accordingly, given defendant's refusal to waive his ex post facto rights, we concluded the trial judge did not err by not charging the jury on the third-degree strict liability offense. Id. at 4-5.

---

[1] N.J.S.A. 11-5.3(d) explicitly provides, "[i]t shall not be a defense to a prosecution under this section that the decedent contributed to [her] own death by reckless or negligent conduct or operation of a motor vehicle."

A-3679-21

In the summer of 2021, defendant filed two pro se PCR petitions. In a July 13, 2021 petition, defendant claimed he was denied his right to the effective assistance of counsel regarding sentencing issues; that the victim grabbed the steering wheel; and that the victim was taken to the wrong hospital. In his August 16, 2021 petition, defendant claimed he was denied his right to the "effective assistance of plea/trial/appellate counsel." Judge Regina Caulfield denied both petitions because defendant failed to "set forth with specificity the facts upon which the claim for relief is based, the legal grounds [the] complaint asserts, and the particular relief sought."

On October 4, 2021, defendant filed a third PCR petition, again arguing his Sixth Amendment right to effective assistance of counsel was violated. Assigned PCR counsel filed an amended petition and brief arguing defendant's trial attorney failed to explain the need for defendant to waive his ex post facto protections in order to have the lesser included offense of third-degree strict liability vehicular homicide presented to the jury. Defendant claimed he would have waived his rights under the Ex Post Facto Clause if he fully understood the law.

Judge Boretz denied defendant's PCR without an evidentiary hearing, concluding defendant's latest contentions were "belied by both the trial court

record as well as [d]efendant's own sworn testimony at trial."  Judge Boretz determined the record "unequivocally establish[ed] that the [d]efendant understood he would be required to waive his constitutional protection under the Ex Post Facto [C]lause in order to submit the strict liability offense to the jury and that his refusal to do so was the result of a deliberate and sound trial strategy."  Judge Boretz further found defense counsel "presented a sound trial strategy that if successful, would have resulted in little to no jail time for [d]efendant."  The judge stated, "it cannot seriously be contended that [d]efense counsel's representation of the [d]efendant 'made errors so serious that counsel was not functioning as the counsel guaranteed by the Six Amendment.'"  Judge Boretz thus concluded defendant "failed to establish that counsel's performance was deficient or that defense counsel's performance prejudiced the [d]efendant."

Defendant raises the following contention for our consideration:

> POINT I
>
> THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE THE DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILING TO ADEQUATELY EXPLAIN TO HIM THE NEED TO WAIVE THE CONSTITUTIONAL PROTECTIONS OF THE EX POST FACTO CLAUSE, IN ORDER FOR THE JURY TO BE CHARGED WITH THE LESSER-INCLUDED

9

OFFENSE OF THIRD-DEGREE STRICT LIABILITY VEHICULAR HOMICIDE.

II.

We begin our analysis by acknowledging the legal principles governing this appeal.  PCR serves the same function as a federal writ of habeas corpus. State v. Preciose, 129 N.J. 451, 459 (1992).  When petitioning for PCR, a defendant must establish, by a preponderance of the credible evidence, that he or she is entitled to the requested relief.  Ibid.  The defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision."  State v. Mitchell, 126 N.J. 565, 579 (1992).  "Where, as here, the PCR court has not conducted an evidentiary hearing, we review its legal and factual determinations de novo."  State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020); see also State v. Nash, 212 N.J. 518, 540-41 (2013).

In addressing an ineffective assistance claim, New Jersey courts follow the two-part test articulated by the United States Supreme Court in Strickland v. Washington. 466 U.S. 668, 687 (1984).  See State v. Fritz, 105 N.J. 42, 58 (1987).  "First, the defendant must show that counsel's performance was deficient."  State v. Gideon, 244 N.J. 538, 550 (2021) (quoting Strickland, 466 U.S. at 687).  Second, the defendant must have been prejudiced by counsel's deficient performance.  Ibid.  (citing Strickland, 466 U.S. at 687).

10

To meet the first prong of the <u>Strickland</u>/<u>Fritz</u> test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687. Reviewing courts indulge in "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." <u>Id.</u> at 689.

The second <u>Strickland</u> prong requires the defendant show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u> at 687. Put differently, counsel's errors must create a "reasonable probability" that the outcome of the proceedings would have been different if counsel had not made the errors. <u>Id.</u> at 694. This "is an exacting standard." <u>Gideon</u>, 244 N.J. at 551 (quoting <u>State v. Allegro</u>, 193 N.J. 352, 367 (2008)). "Prejudice is not to be presumed," but must be affirmatively proven by the defendant. <u>Ibid.</u> (citing <u>Fritz</u>, 105 N.J. at 52, and <u>Strickland</u>, 466 U.S. at 693).

Short of obtaining immediate relief, a defendant may show that an evidentiary hearing is warranted to develop the factual record in connection with an ineffective assistance claim. <u>See</u> <u>Preciose</u>, 129 N.J. at 462-63. But the mere raising of a claim for PCR does not entitle the defendant to an evidentiary

11

hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). The PCR court should grant an evidentiary hearing only when: "(1) the defendant establishes a prima facie case in support of PCR; (2) the court determines that there are disputed issues of material fact that cannot be resolved by review of the existing record; and (3) the court determines that an evidentiary hearing is required to resolve the claims asserted." State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Porter, 216 N.J. 343, 354 (2013)). "A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" Porter, 216 N.J. at 355 (quoting R. 3:22-10(b)).

Turning to the substantive legal principles governing this appeal, the United States and New Jersey Constitutions prohibit the Legislature from enacting ex post facto laws. U.S. Const. art. I, § 10, cl. 1; N.J. Const. art. IV, § 7, ¶ 3; Fortin, 198 N.J. at 626-27. New Jersey's ex post facto jurisprudence follows the federal jurisprudence. State v. Perez, 220 N.J. 423, 439 (2015) (citing State v. Fortin, 178 N.J. 540, 608 n.8 (2004)). "The Ex Post Facto Clause was intended to interdict the retroactive application of criminal laws that harm the accused." Fortin, 178 N.J. at 608. "The drafters of that clause understood

that it would be unjust to prosecute a person for a crime . . . that was not on the books at the time of the commission of the act covered by the subsequent legislation." Ibid.

"An ex post facto penal law is defined by 'two critical elements. . . it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.'" State v. Natale, 184 N.J. 458, 491 (2005) (alteration in original) (quoting Weaver v. Graham, 450 U.S. 24, 29 (1981)).  For an ex post facto violation to occur, "the statute in question must either (1) punish as a crime an act previously committed, which was innocent when done; (2) make more burdensome the punishment for a crime, after its commission; or (3) deprive a defendant of any defense available according to the law at the time when the crime was committed."  State v. Muhammad, 145 N.J. 23, 56 (1996) (citing Beazell v. Ohio, 269 U.S. 167, 169-70 (1925)).

III.

We next apply these general principles to the matter before us.  Defendant contends his refusal to waive his ex post facto rights was not knowing, intelligent, and voluntary because "trial counsel effectively subverted his prospective waiver."  In support of that contention, defendant states in his PCR

13

certification he "did not understand" he needed to waive his constitutional protections to have third-degree strict liability vehicle homicide charged to the jury. He claims his trial counsel "never made clear" or "really explained" that waiver was "critical to the success" of his motion to charge the jury with the lesser included offense, and he "can think of no logical reason to pursue the motion without waiving ex post facto protection." Defendant further contends he "would have agreed to waive if someone had just said that [he] had to waive to get the third-degree charge before the jury."

Defendant maintains "trial counsel's failure to explain the need to waive the constitutional protections of the Ex Post Facto Clauses, in order for the jury to be charged with the lesser-included offense of third-degree strict liability vehicular homicide, constituted a prima facie case of ineffectiveness. . . ." Furthermore, defendant now claims that if he had waived his constitutional protections, "counsel's 'trial strategy,' that Ms. Edwards' reckless behavior caused her death, could have been substituted, albeit belatedly, by applying N.J.S.A. 2C:11-5.3, the third-degree strict liability statute."

Defendant asks us to remand the matter for an evidentiary hearing so his trial counsel can "testify about what he told [defendant] concerning ex post facto

protection and the waiver issue." He also wants his "PCR attorney to ask [trial counsel] to explain what reason [he] gave for declining to waive."

Defendant acknowledges his colloquy with Judge Daniel about the waiver issue, but claims "I was too frightened to think clearly when Judge Daniel spoke to me. I just said, 'Yes.' You are supposed to say yes when a judge speaks to you. That much I know."

We are unpersuaded by defendant's arguments. We agree completely with Judge Boretz that defendant's claims "are belied by both the trial court record as well as [d]efendant's own sworn testimony at trial." As Judge Boretz aptly emphasized, "[a] review of the trial record demonstrates that the [waiver] issue was fully discussed at length with counsel for both sides" with defendant present. Judge Daniel explained the Ex Post Facto Clause, the protections it provides defendant, and why a jury charge on N.J.S.A. 2C:11-5.3 required defendant's voluntary waiver. The trial judge noted it was "undisputed" defendant was "not willing to waive" the Ex Post Facto Clause. Lest there be any doubt on this score, the trial judge personally addressed defendant to ensure defendant understood his ex post facto rights and the impact of his decision not to waive them. Defendant confirmed he had the opportunity to speak with his attorney, that he understood why the requested jury charge would violate the Ex

Post Facto Clause without his waiver, and that he did not need any additional time to consult further with his attorney.

We also agree with Judge Boretz's finding that defendant's refusal to waive his ex post facto protections "was a well thought out and purposeful strategy to present the jury with an 'all or nothing' approach." As Judge Boretz explained:

> Defense counsel presented a very sound trial strategy that if successful, would have resulted in an acquittal of the second-degree charge and only subjected the [d]efendant to a municipal offense, which would have resulted in little or no jail time. The fact that the jury ultimately was persuaded by the State's evidence and found [d]efendant guilty does not indicate that defense counsel's efforts, and the trial strategy used, fell below the standards of professional competency.

In sum, defendant has not established a prima facie case under either prong of the Strickland/Fritz test. See Cummings, 321 N.J. at 170. Nor has defendant established there are disputed issues of material fact that cannot be resolved by a review of the existing record. See Vanness, 474 N.J. Super. at 623. Accordingly, he is not entitled to an evidentiary hearing much less to vacate his vehicular homicide conviction.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION